753 So.2d 151 (2000)
CORPORATE SECURITIES GROUP, Appellant,
v.
Shirley LIND, Appellee.
No. 4D99-1394.
District Court of Appeal of Florida, Fourth District.
February 16, 2000.
Rehearing Denied March 29, 2000.
Howard A. Tescher of Kipnis Tescher Lippman Valinsky, Fort Lauderdale, for appellant.
Thomas D. Lardin of Thomas D. Lardin, P.A., Fort Lauderdale, for appellee.
FARMER, J.
In this appeal from an order denying a defendant's motion to compel arbitration, the central issue is whether the court or arbitrators should determine whether plaintiff's claims are covered by the arbitration agreement between the parties. Plaintiff argues that under NASD Rule 10304 her claim is outside the agreement to arbitrate and that the judge can properly so decide.[1] Conceptually, the issue is really who decides whether the claim is arbitrable.
In Wylie v. Investment Management & Research Inc., 629 So.2d 898 (Fla. 4th DCA 1993), we held en banc that the arbitrators, not the court, should determine the limitations issue when the arbitration arises under the United States Arbitration Act. 9 U.S.C. §§ 1-16 (1991). The case today raises the collateral question whether Wylie, though not receded from by this court, is nevertheless (as they say in the Law Schools) still good law. We think not, and simply recognize that under the primacy of a later United States Supreme Court decision Wylie has been superseded.
Our opinion in Wylie began with the premise that this issue of federal law was unsettled. There was then no definitive holding of the Supreme Court on the issue, "who determines arbitrability," and the federal appellate courts were divided. Noting that circumstance, we explained:

*152 "When a state appellate court is asked to decide a federal question as to which there is no Supreme Court authority directly on point, and the Circuit Courts of Appeal are divided, there is no established rule to guide such a state court. One mechanical method might be to add up the federal circuits and go with the weight of decisions. Another arguable method is to accord unusual weight to a decision on the issue, if there is one, of the federal circuit in which the state is located. This latter approach has the virtue of establishing that the issue will be uniformly decided by both federal and state courts in the geographic area in which the state is located, thus discouraging forum shopping. In the end, the state court is very much like an Erie-bound federal court deciding uncertain state law; it must guess how the highest court is likely to decide the issue. This is such a case."
Wylie, 629 So.2d at 900.
Thus it is clear that we did not simply decide to follow the holding of the local federal appellate court on this issue. Instead we applied a "reverse-Erie"[2] method in which we felt obligated to decide the issue as we believed the United States Supreme Court would do so if it were instead considering the matter. Our decision in Wylie was thus a projection of what the Supreme Court would do if and when it ultimately confronted the question. Therefore Wylie's continued efficacy rises or falls on that Court's later determination.
Little more than a year after Wylie became final, the Supreme Court finally confronted this issue. In First Options of Chicago v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), the court held that the question whether the arbitrators or the courts have the primary power to determine arbitrability depends on whether the parties agreed to submit the question of arbitrability itself to arbitration. The Court explained:
"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally (though with a qualification we discuss below) should apply ordinary state-law principles that govern the formation of contracts. The relevant state law here, for example, would require the court to see whether the parties objectively revealed an intent to submit the arbitrability issue to arbitration.
"This Court, however, has (as we just said) added an important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is `clea[r] and unmistakabl[e]' evidence that they did so. [c.o.] In this manner the law treats silence or ambiguity about the question `who (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question `whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement'for in respect to this latter question the law reverses the presumption. See Mitsubishi Motors, supra[v. Solar Chrysler Plymouth, 473 U.S. 614], at 626[105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)] (`[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration')." [c.o.]
514 U.S. at 944-945, 115 S.Ct. 1920.
The Court also explained why the question "who determines arbitrability" is treated differently from the entirely separate question whether there is an agreement to arbitrate:

*153 "the ... question ... `who (primarily) should decide arbitrability' ... is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers. And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the `who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide."
514 U.S. at 945, 115 S.Ct. 1920.
First Options thus settles the matter and makes clear that our Wylie holding does not accurately state controlling federal law, which we are bound to follow under the Supremacy Clause. No en banc action is now required to formally recede from a previous decision of this court based on federal law which the Supreme Court has since settled differently. First Options has the effect of overruling our decisions in Wylie and Tetzlaff v. Raymond James & Assoc., 649 So.2d 289 (Fla. 4th DCA 1995), which followed Wylie.
We therefore affirm the decision under review. Defendant has failed to demonstrate that the parties "clearly and unmistakably evidenced" an agreement to have arbitrators rather than a court decide the arbitrability (or eligibility) issue. Saying in an arbitration agreement that a particular class of claims is not eligible for arbitration is not at all the same thing as saying plainly that the arbitrators will determine arbitrability.
POLEN and KLEIN, JJ., concur.
NOTES
[1] The arbitration agreement between the parties incorporates NASD rules. Under NASD Rule 10304 claims more than six years old are "not eligible for arbitration."
[2] See Felder v. Casey, 487 U.S. 131, 151, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) ("Just as federal courts are constitutionally obligated to apply state law to state claims, [c.o.] so too the Supremacy Clause imposes on state courts a constitutional duty `to proceed in such manner that all the substantial rights of the parties under controlling federal law [are] protected.'"); Garrett v. Moore-McCormack, Co., 317 U.S. 239, 245, 63 S.Ct. 246, 87 L.Ed. 239 (1942); and Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).