944 So.2d 181 (2006)
O'KEEFE ARCHITECTS, INC., Petitioner,
v.
CED CONSTRUCTION PARTNERS, LTD., et al., Respondents.
No. SC05-1417.
Supreme Court of Florida.
October 19, 2006.
*182 Lee L. Haas of Haas and Castillo, P.A., Clearwater, FL and Deborah A. Gibson of *183 the Marks Law Firm, P.A., Orlando, FL, for Petitioner.
Kevin P. Kelly and Amanda G. Simmons of GrayRobinson, P.A., Orlando, FL, and Kerey Marie Carpenter, Maitland, FL, for Respondent.
PARIENTE, J.
We have for review O'Keefe Architects, Inc. v. CED Construction Partners Ltd., 909 So.2d 370 (Fla. 5th DCA 2005), in which the Fifth District Court of Appeal certified conflict with Reuter Recycling of Florida, Inc. v. City of Dania Beach, 859 So.2d 1271 (Fla. 4th DCA 2003). The conflict issue is whether under the Florida Arbitration Code,[1] a statute of limitations defense is subject to arbitration when the arbitration agreement provides that claims, disputes or other matters arising out of or relating to the contract are to be decided by arbitration, but also provides that a demand for arbitration cannot be made when institution of legal or equitable proceedings based on the underlying claim would be barred by the applicable statute of limitations. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
Because the Florida Arbitration Code allows parties to agree to arbitrate any controversy, the question of whether a dispute is subject to arbitration is a matter of contract interpretation. We hold that a broad agreement to arbitrate includes determining defenses to an otherwise arbitrable claim, including the statute of limitations.[2]

FACTS AND PROCEDURAL HISTORY
On August 30, 1997, O'Keefe Architects, Inc. ("O'Keefe") contracted with Vero Club Partners Ltd. ("Vero Club"), to design a 184-unit housing project. On January 7, 1999, O'Keefe entered into a nearly identical contract with Clearwater Phase I Partners Ltd. ("Phase I"), to design a 240-unit housing project. CED Construction Partners Ltd. ("CED") was the general contractor on both projects.
After discovering latent construction and design defects on their properties, Vero Club and Phase I demanded that CED fix the problems. CED did so and Vero Club and Phase I assigned CED their rights to make a claim for damages against O'Keefe for the defects. CED then filed a demand with the American Arbitration Association for arbitration against O'Keefe and several subcontractors for damages arising from negligent design and construction of both projects. O'Keefe objected to the arbitration on several grounds, including that some of the claims were barred by the statute of limitations and, therefore, were not subject to arbitration under the contracts.
Relevant to the statute of limitations issue, the arbitration clauses in both contracts provide:
7.1 Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.
7.2 Demand for arbitration shall be filed in writing with the other party to *184 this Agreement and with the American Arbitration Association. A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statutes of limitations.
After the arbitrators ruled adversely to O'Keefe on several issues, including the statute of limitations, O'Keefe filed a complaint for declaratory relief against Vero Club, Phase I, and CED. O'Keefe asserted that only Vero Club and Phase I, and not CED, were authorized to bring the arbitration claims because the contracts were not assignable. O'Keefe also raised the statute of limitations defense and asserted that the trial court was required to decide this issue. The trial court entered an order compelling the completion of arbitration and staying the circuit court case. Regarding O'Keefe's statute of limitations defense, the trial court found that this issue was a matter for the arbitrators to decide.
O'Keefe appealed the order to the Fifth District. In a brief decision, the Fifth District affirmed the trial court in all respects. See O'Keefe, 909 So.2d at 370. The district court wrote "only to reiterate that an issue concerning whether a demand for arbitration is timely is a question of fact to be decided by arbitration, and not the trial court. This concept encompasses the position that arbitration is unnecessary because of the expiration of the statute of limitations." Id. (citations omitted). However, the Fifth District certified conflict with Reuter Recycling, in which the Fourth District reviewed an arbitration agreement that contained similar language regarding timeliness and reversed the trial court's order refusing to enjoin the arbitration.[3]

ANALYSIS
Both parties agree that the Florida Arbitration Code (FAC), rather than the Federal Arbitration Act (FAA), applies in this case. Because both parties are Florida corporations involved in Florida construction projects, interstate commerce is not involved and, thus, the provisions of the FAC control. Cf. Musnick v. King Motor Co., 325 F.3d 1255, 1258 n. 2 (11th Cir.2003) ("[T]he FAA applies to all arbitration agreements involving interstate commerce. . . .") (citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001)); Wachovia Securities, LLC v. Vogel, 918 So.2d 1004, 1007 (Fla. 2d DCA 2006) ("Where . . . interstate commerce is involved, federal law governs the analysis of the arbitration proceeding.").
The FAC provides that "[t]wo or more parties . . . may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof." § 682.02, Fla. Stat. (2005) (emphasis supplied). If a *185 dispute arises regarding a party's refusal to comply with an agreement to arbitrate, the court is required to compel arbitration if it "is satisfied that no substantial issue exists as to the making of the agreement or provision." § 682.03(1), Fla. Stat. (2005).
In ruling on a motion to compel arbitration of a dispute, the court must consider three issues: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). The issue here, whether O'Keefe's statute of limitations defense to an otherwise arbitrable claim is also subject to arbitration, falls under the second of these considerations.[4]
Arbitration clauses are creatures of contract. As a result, courts look to the intent of the parties as manifested in the contract to determine whether an arbitration clause compels arbitration of a particular dispute. Seifert, 750 So.2d at 636. Thus, whether O'Keefe's statute of limitations defense is subject to arbitration is a matter of contract interpretation that is reviewed de novo. See Engle Homes, Inc. v. Jones, 870 So.2d 908, 910 (Fla. 4th DCA 2004); Hirshenson v. Spaccio, 800 So.2d 670, 674 (Fla. 5th DCA 2001).
In Stinson-Head, Inc. v. City of Sanibel, 661 So.2d 119 (Fla. 2d DCA 1995), the Second District Court of Appeal held that under the FAC, an arbitration clause almost identical to the clause in O'Keefe's contracts required the parties to arbitrate a statute of limitations defense. Id. at 121.[5] In reaching this decision, the district court recognized that doubts concerning the scope of arbitration agreements should be resolved in favor of arbitration and noted that the plain language of the parties' broad arbitration provision required arbitration on all issues related to the contract. Id. at 120. The Second District acknowledged that the Fourth District had reached a contrary conclusion in Anstis Ornstein Associates, Architects & Planners, Inc. v. Palm Beach County, 554 So.2d 18 (Fla. 4th DCA 1989), but agreed with then Judge Anstead's dissent:
The arbitration clause in question is a broad and comprehensive one covering *186 all disputes between the parties. Another clause provided that the claim for arbitration must be filed within a reasonable time, not to exceed the applicable legal limitation period. I see no reason why the arbitrators cannot properly resolve any dispute between the parties as to compliance with this provision.
Stinson-Head, 661 So.2d at 121 (quoting Anstis Ornstein, 554 So.2d at 19) (Anstead, J., dissenting).
Stinson-Head is consistent with decisions by the First and Third District Courts of Appeal, which have also held that in general, issues of timeliness are to be decided by the arbitrator. See Alderman v. City of Jacksonville, Fire and Rescue Div., 902 So.2d 885, 887 (Fla. 1st DCA 2005) ("[Q]uestions of timeliness are to be decided by an arbitrator, not a trial court."); Pembroke Indus. Park P'ship v. Jazayri Constr., Inc., 682 So.2d 226, 227 (Fla. 3d DCA 1996) ("[T]he issue of whether the demand for arbitration was timely is a question of fact for the arbitrator to decide, not the trial court.").
Stinson-Head is also consistent with recent United States Supreme Court decisions addressing this issue under the FAA. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002).[6]Howsam clarified the scope of the Supreme Court's prior determination that a "`question of arbitrability' is `an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" Id. at 83, 123 S.Ct. 588 (quoting AT & T Techs., Inc. v. Commc'n Workers, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). The Court explained that "[l]inguistically speaking, one might call any potentially dispositive gateway question a `question of arbitrability,' for its answer will determine whether the underlying controversy will proceed to arbitration on the merits," but concluded that the "Court's case law . . . makes clear that, for purposes of applying the interpretive rule, the phrase `question of arbitrability' has a far more limited scope." Id. Thus, the Court distinguished disputes about whether the parties are bound by an arbitration clause or whether a binding arbitration clause governs the controversy from "procedural" questions that grow out of a dispute and bear on its disposition:
[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a "question of arbitrability" for a court to decide. Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court.
At the same time the Court has found the phrase "question of arbitrability" not applicable in other kinds of general circumstance where parties would likely *187 expect that an arbitrator would decide the gateway matter. Thus "`procedural' questions which grow out of the dispute and bear on its final disposition" are presumptively not for the judge, but for an arbitrator, to decide. So, too, the presumption is that the arbitrator should decide "allegation[s] of waiver, delay, or a like defense to arbitrability." Indeed, the Revised Uniform Arbitration Act of 2000 (RUAA), seeking to "incorporate the holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act]," states that an "arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled." RUAA § 6(c), and comment 2, 7 U.L.A. 12-13 (Supp.2002).
Id. at 84-85, 123 S.Ct. 588 (some citations omitted).
Despite the clear thrust of the precedent placing the determination of issues such as this in the hands of the arbitrators, O'Keefe asks this Court to adopt the reasoning of Reuter Recycling and hold that because the contracts preclude the arbitration of time-barred claims, the trial court was required to decide O'Keefe's statute of limitations defense. However, as explained more fully below, we conclude that the Fourth District's analysis is flawed by its characterization of the statute of limitations issue as an "issue of arbitrability." See Reuter Recycling, 859 So.2d at 1273 (concluding that even if the arbitration agreement were ambiguous, the court would still "find that the parties had not agreed to have the arbitrators determine the issue of arbitrability" because "the parties have not clearly and unmistakably manifested an intent to have arbitrators decide the issue as to what specific claims they have agreed to arbitrate") (emphasis supplied).[7]
In Wylie v. Investment Management & Research, Inc., 629 So.2d 898 (Fla. 4th DCA 1993), the Fourth District considered who, under federal law, was to decide whether a claim was ineligible for arbitration under a National Association of Securities Dealers (NASD) rule which provided that claims more than six years old are not eligible for arbitration. The district court reviewed divided federal precedent on the issue and followed the majority view that the limitations issue was for the arbitrators to decide. Id. at 900-01.
The Fourth District subsequently receded from Wylie and held that under the United States Supreme Court's intervening decision in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), whether a claim is eligible for arbitration under the NASD time limit rule is for the court to decide. See Corporate Sec. Group v. Lind, 753 So.2d 151, 153 (Fla. 4th DCA 2000). In Lind, the plaintiff argued that under the NASD rule, her claim was outside the *188 agreement to arbitrate. Id. at 151. The district court framed the issue as "whether the court or arbitrators should determine whether plaintiff's claims are covered by the arbitration agreement between the parties. . . . Conceptually, the issue is really who decides whether the claim is arbitrable." Id. Recognizing that the Supreme Court in First Options clarified that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability," absent clear and unmistakable evidence, Lind, 753 So.2d at 152 (quoting First Options, 514 U.S. at 944, 115 S.Ct. 1920), the Fourth District concluded that First Options had "the effect of overruling" Wylie. Lind, 753 So.2d at 153.
In Reuter Recycling, the Fourth District followed Lind in characterizing the statute of limitations dispute as an issue of arbitrability. However, the court failed to consider the United States Supreme Court's decision in Howsam, which reiterated that "questions of arbitrability" do not include "allegation[s] of waiver, delay, or a like defense to arbitrability," Howsam, 537 U.S. at 84, 123 S.Ct. 588 (alteration in original) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)), and expressly held that whether a claim is timely under the same NASD rule considered in Lind was for the arbitrators to decide. See id. at 85, 123 S.Ct. 588.
In this case, the parties agreed to a broad provision that requires arbitration of "[c]laims, disputes, and other matters . . . arising out of or relating to" the contract. The parties do not dispute that they are bound by the agreement or that the underlying claims, if timely, are subject to arbitration. Although the agreement provides that a demand for arbitration is untimely if the claim would be barred by the applicable statute of limitations, there is nothing in the agreement that establishes that the parties agreed to have this defense to an otherwise arbitrable claim decided by the court. Accordingly, the Fifth District correctly affirmed the trial court's ruling that O'Keefe's statute of limitations defense was to be decided during the arbitration.

CONCLUSION
We hold that under the FAC, a broad agreement to arbitrate, such as the one at issue in this case, includes the determination of statute of limitations defenses. Accordingly, we approve the Fifth District's decision in O'Keefe and disapprove the Fourth District's decision in Reuter Recycling.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] See §§ 682.01-682.22, Fla. Stat. (2005).
[2] We decline to address the other issues raised by O'Keefe that are beyond the scope of the certified conflict. See Barnett v. Barnett, 768 So.2d 441, 442 n. 1 (Fla.2000) (declining to address an issue beyond the scope of the certified conflict).
[3] The arbitration agreement interpreted by the Fourth District provided:

All claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof, shall be decided by arbitration. . . . The demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.
Reuter Recycling, 859 So.2d at 1273.
[4] The parties agree that a valid written agreement exists and that the underlying claims are subject to arbitration. O'Keefe argues that it cannot be required to arbitrate with CED because CED is not a party to the contract but rather an assignee of Phase I and Vero Club. However, O'Keefe does not dispute that it is required to arbitrate any timely claims brought by Phase I and Vero Club. As noted above, we decline to address this or any other issues that are beyond the scope of the certified conflict.

There is also no question of waiver. Waiver of the right to arbitration results from active participation in a lawsuit or from taking action inconsistent with that right. See Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla.2005); see also Florida Educ. Ass'n/United v. Sachs, 650 So.2d 29, 30 (Fla.1995) ("[A] trial court may determine whether parties to an arbitration agreement have, by their subsequent conduct, waived their contractual right to arbitration."). In contrast, "[m]ere delay creating untimeliness is distinct from the active participation that creates waiver." Alderman v. City of Jacksonville Fire & Rescue Div., 902 So.2d 885, 887 (Fla. 1st DCA 2005).
[5] The Second District set forth the relevant provisions:

The contract contained a provision requiring the parties to arbitrate "[a]ll claims, disputes and other matters . . . arising out of, or relating to, the Contract Documents or the breach thereof." It further provided that a demand for arbitration shall be made within a reasonable time after the claim has arisen, "and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations."
Stinson-Head, 661 So.2d at 120.
[6] Although not binding on our interpretation of the issue under the FAC, Howsam is persuasive because both the FAC and the FAA require the court to compel arbitration if it finds that a valid arbitration agreement exists and are silent on the issue of who should decide statute of limitations issues. See § 682.03(1), Fla. Stat. (2005) (requiring the court to compel arbitration if it "is satisfied that no substantial issue exists as to the making of the agreement"); 9 U.S.C. § 4 (2000) (requiring the court to compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue"). This is in sharp contrast to New York's arbitration law, which expressly provides that "[i]f, at the time that a demand for arbitration was made or a notice of intention to arbitrate was served, the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration on an application to the court." N.Y.C.P.L.R. 7502(b) (McKinney Supp.2006) (emphasis supplied).
[7] The Fourth District's statement that it was addressing "an issue of arbitrability" could be construed as reflecting an assumption that the claims were in fact time-barred and therefore contractually exempt from arbitration. See Reuter Recycling, 859 So.2d at 1273 (concluding that that arbitration provision was unambiguous and "expressly excludes time-barred claims from the agreement to arbitrate," and that the trial court erred in finding that the parties agreed "to have the arbitrators determine arbitrability as to time-barred claims"). However, Reuter Recycling is ambiguous as to whether the Fourth District was determining who decides whether the statute of limitations applies or instead who decides whether it is the judge or arbitrator who decides whether the statute of limitations applies. Because the Fifth District certified conflict with Reuter Recycling on the issue of who decides whether the statute of limitations applies, we treat Reuter Recycling as holding that the trial court was required to decide whether the claims were barred by the statute of limitations.