LaROSE, Judge.
SCG Harbourwood LLC, d/b/a Harbour-wood Health & Rehab Center, appeals the trial court’s denial of its motion to compel arbitration. Harbourwood argues that its contract with Eleanor Hanyan provided for arbitration of disputes. Harbourwood contends that an arbitration opt-out provision in the contract was not agreed to by the parties at the time the contract was signed and could not later be invoked by Ms. Hanyan. We have jurisdiction, see Fla. R.App. P. 9.130(a)(3)(C)(iv), and reverse.
The contract contained the following provision that is central to our decision:
OPTIONAL ARBITRATION CLAUSE:
If the parties to this agreement do not wish to include the following arbitration provision, please indicate so by marking a[n] “X” through this clause. Both parties shall also initial the “X” to signify their agreement to refuse arbitration. Any controversy or claim arising out of or relating to the Agreement, o[r] the breach thereof, shall be settled by arbitration in accordance with the provisions of the State Arbitration Code in which the facility is located, and judg[]ment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.
Ms. Hanyan’s daughter, as attorney in fact, signed the contract on January 19, 2011. She initialed each page of the contract including the page containing the arbitration provision. Neither party opted out of arbitration at that time.
Ms. Hanyan stayed at Harbourwood for nursing care and rehabilitation. In late July 2011, she sued Harbourwood for negligent care. Harbourwood moved to compel arbitration. Apparently on the advice of counsel, Ms. Hanyan took a photocopied version of the contract, marked an “X” through the arbitration clause, and advised Harbourwood that she was opting out of arbitration.
In the trial court, Harbourwood argued that a plain reading of the provision “clearly reflects that the parties agreed to arbitration of all claims arising out of or relating to the admission to the facility unless the clause was crossed out. The clause was left unmarked by [Ms. Hanyan], who did initial the page and sign the agreement.” The trial court rejected this argument:
*1199 For the record, [t]he [c]ourt is making a finding that this arbitration clause as written would permit [Ms. Hanyan] to X through it at any point in time and opt out of arbitration. That’s [t]he [c]ourt’s finding for the record.
[[Image here]]
Sustained. And I think I need to clarify a little bit. I think — and this is for the record.
I think the problem here is you’re talking about the agreement being changed because of my interpretation; that is, that she could X this out after whenever she wants later on. You see, therein lies one of the problems. And I thought I made this clear, I don’t think that is a change in the contract.
I think the contract, at its inception, permitted them to make the decision as to whether they want to go to arbitration, or into judicial proceedings after the cause of action arose.
And I don’t think that is a change in the contract. I think that’s the way the contract was at the time that it was signed. And if I didn’t make that clear, I apologize.
But I think the point that you’re making, and I think the record needs to be clear on this, and I don’t think [Ms. Hanyan] contests this, and that is that the services that were called for, with the exception of what’s been pled in the complaint, that services were provided pursuant to this contract before she X’d out the arbitration clause.
[[Image here]]
Thank you. The [c]ourt is going to deny the [m]otion to [c]ompel. The grounds ... [are] as I’ve already stated on the record ... this provision ... provided by [SCG Harbourwood or its agent] ... allowed — at the time that this agreement was signed, allowed for them to opt out of the arbitration clause at a time after the contract was entered into.
I think that’s consistent with the plain language of this contract. If there’s any ambiguity, the ambiguity is to be construed against the drafter of the contract.
I don’t think it is ambiguous. I think that’s the way it’s written. They may not have wanted it to be that way, but that’s the way, in my view, it is written.
In this case, as I’ve already found, an authorized person X’d through ... the clause ... opting out of the arbitration provision subsequent to entering into the contract. It allowed them to do that.
I don’t think that was a change in the contract. I think that’s the clear language of the contract, and that right existed at the time it was signed.
Accordingly, I’m going to deny the [m]otion to [c]ompel.
It’s a very interesting question that I’ve not seen before, and I’ll look forward to some guidance on this.
(Emphasis added).
Whether a particular dispute is subject to arbitration is a matter of contract interpretation that we review de novo. State Bd. of Admin, v. Burns, 70 So.3d 678, 680 (Fla. 1st DCA 2011) (citing O’Keefe Architects, Inc. v. CED Constr. Partners, Ltd., 944 So.2d 181, 185 (Fla.2006)). Florida public policy favors arbitration and all doubts as to the scope of an arbitration agreement should be resolved in favor of arbitration.
[Construction of an arbitration clause remains subject to the contract law requirement that the court discern the intent of the parties from the language used in their agreement. Arbitration is mandatory only where the subject mat *1200 ter of the controversy falls within what the parties have agreed will be submitted to arbitration. It is the language of the agreement that defines the scope of an arbitration agreement.
Burns, 70 So.3d at 680-81 (quoting Citigroup, Inc. v. Boles, 914 So.2d 23, 25 (Fla. 4th DCA 2005)); see also O’Keefe, 944 So.2d at 185 (“Arbitration clauses are creatures of contract. As a result, courts look to the intent of the parties as manifested in the contract to determine whether an arbitration clause compels arbitration of a particular dispute.”).[1]
We may consider de novo whether contract terms are unambiguous. See Dows v. Nike, Inc., 846 So.2d 595, 601 (Fla. 4th DCA 2003). We conclude that the arbitration provision unambiguously required both parties to opt out of arbitration at the time of the contract signing. A plain reading of the optional arbitration clause shows that both parties could opt out of arbitration by placing an “X” through the clause. Neither party exercised its authority at the time of signing and nothing in the provision suggests that it could be exercised unilaterally at a later time. The intent of the parties is discerned from the total writing and not particular provisions or disjointed parts. See Paddock v. Bay Concrete Indus., Inc., 154 So.2d 313, 315 (Fla. 2d DCA 1963).
If a contract provision is clear and unambiguous, a court may not consider extrinsic or parol evidence to change the plain meaning set forth in the contract. Jenkins v. Eckerd Corp., 913 So.2d 43, 52 (Fla. 1st DCA 2005). The operation of the parol evidence rule encourages parties to embody their complete agreement in a written contract and fosters reliance upon the written contract. Id. at 53. “The parol evidence rule serves as a shield to protect a valid, complete and unambiguous written instrument from any verbal assault that would contradict, add to, or subtract from it, or affect its construction.” Id. (quoting Sears v. James Talcott, Inc., 174 So.2d 776, 778 (Fla. 2d DCA 1965)). The trial court found the optional arbitration contractual provision to be unambiguous and to allow exercise of the option at any future time, a decision that must be reversed. To the extent, if any, that the trial court relied on testimony by Ms. Han-yan’s daughter that she was told or thought that she could opt out of the arbitration provision at any time, the testimony should not have been considered and would constitute a clear abuse of discretion. See Jenkins, 913 So.2d at 49.
A contract is made under Florida law when three elements are present: offer, acceptance, and consideration. Pezold Air Charters v. Phoenix Corp., 192 F.R.D. 721, 725 (M.D.Fla.2000). Furthermore, the unilateral modification of a contract is unenforceable. Dows, 846 So.2d at 603. “Any subsequent modification requires consent and a meeting of the minds *1201 of the parties to the contract whose rights or responsibilities are sought to be affected by the modification.” Id.; see also Newkirk Constr. Corp. v. Gulf Cnty., 366 So.2d 813, 815 (Fla. 1st DCA 1979) (“Modifications of contracts must be supported by new consideration as well as the consent of both parties. Moreover, a party who alleges a contract has been modified has the burden of proving it.”).
Reversed.
SILBERMAN, C.J., and WHATLEY, J., Concur.

. We note that the optional arbitration clause is like or similar to optional arbitration clauses mentioned in a number of Florida cases. We found no case where the issue(s) litigated were like the one raised here. See, e.g., Jaylene, Inc. v. Moots, 995 So.2d 566 (Fla. 2d DCA 2008) (holding that attorney in fact had authority to bind principal to arbitration agreement contained in nursing home care contract); Estate of Orlanis v. Oakwood Terrace Skilled Nursing & Rehab. Ctr., 971 So.2d 811 (Fla. 3d DCA 2007) (holding that the nursing homes waived right to arbitration when they availed themselves of discovery before seeking arbitration); Consol. Res. Healthcare Fund I, Ltd. v. Fenelus, 853 So.2d 500 (Fla. 4th DCA 2003) (holding that optional arbitration clause was not procedurally or substantively unconscionable and was fair, optional, and could be refused; a party is normally bound by a contract that he or she signs unless prevented from reading it or induced by the other party not to read it).