NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


FLORIDA PENINSULA INSURANCE )
COMPANY, )
 )
     Appellant, )
 )
v. )     Case No.   2D12-4575
 )
MARICELA CESPEDES, )
 )
     Appellee. )
_____)

Opinion filed December 17, 2014.

Appeal from the Circuit Court for
Hillsborough County; Sam D. Pendino,
Judge.

Kristen A. Tajak of Cole, Scott &
Kissane, P.A., Miami, for Appellant.

A. Lee Smith of Thompson Trial Group,
P.A., Tampa, for Appellee.


KELLY, Judge.


       Maricela Cespedes brought an action against her property insurer, Florida

Peninsula Insurance Company, for failure to pay benefits regarding her claim for

sinkhole damages.  Florida Peninsula moved for summary judgment arguing that Ms.

Cespedes' policy excluded sinkhole damage.  Ms. Cespedes countered with a motion

for partial summary judgment in which she argued that her homeowner's insurance policy was ambiguous regarding sinkhole coverage.  The trial court granted her motion and denied Florida Peninsula's motion.  Florida Peninsula filed a timely notice of appeal from the final judgment awarding Ms. Cespedes $125,400.  Because we conclude that Ms. Cespedes' policy unambiguously excluded sinkhole damage, we reverse.

The policy Florida Peninsula issued to Ms. Cespedes contained an endorsement stating:

> YOUR POLICY PROVIDES COVERAGE FOR A CATASTROPHIC GROUND COVER COLLAPSE THAT RESULTS IN THE PROPERTY BEING CONDEMNED AND UNINHABITABLE. OTHERWISE, YOUR POLICY DOES NOT PROVIDE COVERAGE FOR SINKHOLE LOSSES. YOU MAY PURCHASE ADDITIONAL COVERAGE FOR SINKHOLE LOSSES FOR AN ADDITIONAL PREMIUM.

This endorsement was also contained in the Homeowners Declaration.  In addition, the Special Provisions Endorsement states:

> The following Exclusion 1.i. is added to Section I – Exclusions:
>
> i. **Loss caused by "sinkhole"**
>
>     (1)  "Sinkhole" means:
>
>         (a)  A landform created by subsidence of soils, sediment, or rock as underlying strata are dissolved by ground water.
>
>         (b)  A "sinkhole" may form by collapse into subterranean voids created by dissolution of limestone or dolostone or by subsidence as these strata are dissolved.
>
>         (c)  This exclusion does not apply to the peril of "Catastrophic Ground Cover Collapse."

The Special Provisions Endorsement also defines "catastrophic ground cover collapse"

as follows:

> "Catastrophic ground cover collapse" means geological activity that results in all of the following:
>
> (1)  The abrupt collapse of ground cover;
>
> (2)  A depression in the ground cover clearly visible to the naked eye;
>
> (3)  Structural damage to the building, including the foundation; and
>
> (4)  The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

The only other provision in the policy that references sinkholes is also contained in the

Special Provisions Endorsement and states:

> The following are additional conditions to Section I – CONDITIONS of your policy:
>
> **17. Neutral Evaluation Program**
>
> With respect to a claim for alleged "Sinkhole loss", a neutral evaluation program is available as follows:
>
> > a.  Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the department).
> >
> > b.  For alleged "Sinkhole loss" to property, this program applies instead of the Mediation and Appraisal condition set forth elsewhere in this policy.

c. You or we may file a request with the Department for neutral evaluation; the other party must comply with such request.

d. We will pay the costs associated with the neutral evaluation regardless of which party makes the request.

e. The neutral evaluator will be selected from a list maintained by the Department.

The recommendation of the neutral evaluator will not be binding on you or us.

f. Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Suit Against Us Condition 8 in this policy.

In granting Ms. Cespedes' motion for partial summary judgment and denying Florida Peninsula's motion, the trial court found that this latter provision created an ambiguity and that Ms. Cespedes was entitled to coverage for her sinkhole claim.

"The standard of review governing a trial court's ruling on a motion for summary judgment posing a pure question of law is de novo." Major League Baseball v. Morsani, 790 So. 2d 1071, 1074 (Fla. 2001). The construction of an insurance contract is a question of law, not a question of fact; therefore, our standard of review is de novo. Kattoum v. N.H. Indem. Co., 968 So. 2d 602, 604 (Fla. 2d DCA 2007). We agree with Florida Peninsula that the trial court erred as a matter of law in denying its motion for summary judgment because Ms. Cespedes' policy clearly and unambiguously excludes coverage for sinkhole damages.

If the language in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written. Washington Nat'l Ins. Corp. v. Ruderman, 117 So. 3d 943, 948 (Fla.

- 4 -

2013).  "In construing insurance contracts, 'courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.' " Id. (quoting U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 877 (Fla. 2007)).  "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered ambiguous." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000).  The plain language of Ms. Cespedes' policy excludes sinkhole damage.  The fact that the policy contains a provision describing the neutral evaluation process in the event of a sinkhole loss cannot reasonably be read as creating coverage for a loss that is unambiguously excluded.  Because the relevant policy language is susceptible to only one reasonable interpretation, it was error for the trial court to deny Florida Peninsula's motion for summary judgment.  Accordingly, the judgment in favor of Ms. Cespedes is reversed and this case is remanded with instructions to enter judgment in favor of Florida Peninsula.

Reversed and remanded with instructions.

VILLANTI, J., Concurs with opinion.
ALTENBERND, J., Concurs and dissents with opinion.

VILLANTI, Judge, Concurring.

I fully concur in Judge Kelly's opinion and write to point out that the generally convoluted structure of homeowner's insurance policies in Florida did not work an injustice in this case. Even if Ms. Cespedes' understanding of the policy was relevant—which it is not in the face of the policy's unambiguous language, see SCG Harbourwood, LLC v. Hanyan, 93 So. 3d 1197, 1200 (Fla. 2d DCA 2012)—the record arguably shows that she knew that her policy did not include coverage for sinkhole loss. At her deposition, Ms. Cespedes testified that she specifically recalled being informed that sinkhole coverage would require an extra premium, and she specifically elected not to pay that additional premium. Thus, it would be serendipitous indeed if we were to allow her alleged inability to understand the provisions of her written policy to supersede her knowledge that she opted not to pay the additional premium for sinkhole coverage or to operate as some sort of penalty on Florida Peninsula for using the incorrect font in a warning that Ms. Cespedes admittedly never read.

I also write to point out that insurance companies would be involved in much less litigation if they devised an alternative to the current "one form fits all" approach that requires them to customize each "standard" policy through the use of endorsements and special provisions. This is particularly true for "sinkhole" coverage. Prior to 2007, all Florida insurers were required to include "sinkhole" coverage in all homeowner's policies. This coverage included damage, however small, from all sinkhole activity, however small. But as of January 25, 2007, the legislature required insurers to provide coverage only for "catastrophic ground cover collapse"—a narrower term intended to limit the mandatory "sinkhole" coverage to only those situations in

which, as the name implies, the top of the sinkhole has actually collapsed. <u>See</u> Ch. 2007-1, § 30, Laws of Fla. As of that date, insurers were no longer required to provide coverage for damage caused by a sinkhole that did not actually collapse, although they could continue to provide that broader coverage for an additional premium. While this change in the extent of coverage was significant, the ungainly terminology of "catastrophic ground cover collapse" has not caught on, and most insureds—and indeed probably many insurance agents—fail to appreciate that the standard homeowner's insurance policy no longer covers all types of sinkhole activity that could result in damage to the insured's home. Moreover, it appears that the standard homeowner's policy forms have not been amended to account for this change either— providing nowhere on the "checklist of coverage" to indicate that coverage exists for "catastrophic ground cover collapse" as distinguished from "sinkhole" coverage.

These standard homeowner's insurance policy forms, which consistently reference coverage terms and conditions that do not actually apply to any given policy and which fail to reflect statutory coverage changes that have been in effect for almost eight years, can be addling to even experienced agents, adjusters, and attorneys. Florida policyholders deserve better. However, an insured's befuddlement resulting from these standard forms cannot create coverage where none otherwise exists. Hence, I agree that we must reverse the judgment in this case and remand for entry of summary judgment in favor of Florida Peninsula.

ALTENBERND, Judge, Concurring in part and dissenting in part.

Although I reluctantly agree that Maricela Cespedes is not entitled to summary judgment due to the plain language in the endorsement identified as "FP CGCC (03/08)," which is quoted in bold type in the court's opinion, I do not believe that this endorsement entitles Florida Peninsula to summary judgment at this stage of the proceedings. The statutory language in this endorsement is intended to be an obvious warning provided to the insured about the contents of the insurance contract, not an endorsement buried deep inside the contract. Thus, while I agree that the policy does contain a legally unambiguous exclusion for sinkhole damage, in the absence of a warning on the face of the policy, it is not clear to me that the exclusion is enforceable.

Without stating the facts in detail, it is fair to say that Ms. Cespedes and Florida Peninsula's field agent both thought this policy provided sinkhole coverage from the point when she first reported her suspicions that her home had sustained sinkhole damage in June 2009 through the time when the licensed professional engineer retained by Florida Peninsula confirmed her suspicions in 2010.[1] Apparently, it was only when a more highly trained case manager reviewed the file that the insurance company realized that the policy contained an exclusion. Thus, the initial inquiry in this

[1]To the extent that Judge Villanti's concurrence suggests that no remand is necessary to make factual determinations in this case because Ms. Cespedes knew her 2009 policy did not include coverage for sinkhole loss and that she had not elected to pay for that coverage, I believe he may read too much into the deposition. She testified that she asked for "anything that covers my house." The declarations page simply has no information from which an insured can determine whether a premium has been charged for this coverage. Ms. Cespedes testified that her agent thought she had sinkhole coverage when she reported the claim in June 2009. She knew that she had no coverage in the policy issued after the claim in 2010.

case might be to determine why both Ms. Cespedes and the trained field adjuster were unable to determine that the policy "unambiguously excluded sinkhole damage." Five circumstances appear to explain their confusion.

First, neither the transmittal letter with the policy nor the beginning sections of the insurance policy contains a warning that this exclusion exists. Section 627.706(4), Florida Statutes (2008), required insurers offering policies that exclude coverage for sinkhole damage to "inform policyholders in bold type" of that exclusion. The majority's opinion quotes the statutory warning and relies on it as the primary source of the clear and unambiguous exclusion of coverage. But, as I read the statute in the context of the insurance code, the warning is not intended to be an endorsement added to the end of the policy. It is not supposed to be a part of the contract at all; it is supposed to be a bold front-end warning informing the insured about the exclusion that is somewhere within the contract.

In this case, the declarations page lists "Forms and Endorsements." In that list is "FP CGCC (03/08)." This is the warning given to the insured. By contrast, the declarations page has two issues disclosed in bold type. Section 627.7011(4), Florida Statutes (2008), required a policy to "include" a statement in bold type concerning "law and ordinance coverage." Florida Peninsula dutifully placed that warning on the declarations page. Likewise, section 627.701(4)(a), Florida Statutes, required a bold warning on the "face" of the policy that the policy contained a separate deductible for hurricane losses. Florida Peninsula placed that warning on page two of the declarations. But Florida Peninsula did nothing similar for the sinkhole exclusion.

These circumstances do not make the policy legally ambiguous. I am not

certain what, if any, remedy is available to Ms. Cespedes if Florida Peninsula failed to comply with section 627.706(4), Florida Statutes. This is the issue I would leave open for consideration on remand.

The remaining four factors probably confused Ms. Cespedes and the insurance company's field agent, but they are not matters that will entitle her to any relief on remand. Nevertheless, they warrant comment. The second factor is the policy's four-page "Homeowners Declaration." As explained above, it reveals the added exclusion only in the cryptic code listed in the "Forms and Endorsements." Because sinkhole coverage is already included within the body of the main policy, which is identified as "HO 00 03 04 91," this is not an added coverage option; it is merely an exclusion. Thus, there is no place on the declarations page to list an amount of coverage or the price charged for "sinkhole coverage." Coverages that may be included within a policy usually are stated on the declarations page with either a statement of the price charged, the premium, or with the word "included" or "excluded." Without that option or a statement that the premium has been reduced in light of an added exclusion, nothing on the declarations page directly informs the insured of this exclusion.

Third, the original HO-3 insurance policy that was commonly issued in the 1970s was a relatively short and readable contract that could be comprehended by a high school graduate. It has evolved in this case into a seventeen-page form identified as "HO 00 03 04 91." Because that form is intended for use in many states, it does not align with Florida law or the underwriting desires of Florida insurers. As a result, the seventeen-page form is followed by a fourteen-page "Special Provisions—Florida" endorsement, identified as "FP 23 04 08," that adds and deletes contract language from

the national form. In my opinion, while not legally ambiguous, it has become structurally ambiguous and exceedingly difficult for Florida's homeowners to read and understand. Except in the eyes of trained lawyers and insurance agents, there is nothing plain and unambiguous about the standard homeowner's insurance policy. But under the applicable Florida law, the homeowner is not treated differently than a large corporation with a lawyer in charge of risk management; the fact that the policy is "complex or requires analysis" does not render the policy ambiguous. Penzer v. Transp. Ins. Co., 29 So. 3d 1000, 1005 (Fla. 2010) (rule stated as to commercial coverage); Garcia v. Fed. Ins. Co. 969 So. 2d 288, 290-91 (Fla. 2007) (rule stated as to homeowner's coverage).

Fourth, and perhaps most telling, there is a mistake in the "checklist of coverage" that was provided with this policy. The checklist was inserted immediately after the declarations page and before the main sections of the policy. In the checklist, the box next to "sinkhole" coverage contains a "Y," which is the letter for "yes, you have this coverage." A reasonable person might think that a mistake or misrepresentation of coverage in such a checklist would create an ambiguity within the policy. But the legislature does not agree.

To address the problem of modern insurance policies that are too complex for average Floridians to understand, the legislature requires insurance companies to give the homeowner an "outline of coverage" either with the policy or before it arrives. See § 627.4143, Fla. Stat. (2008). Florida Peninsula's "checklist of coverage" is its compliance with this statute. But subsection 627.4143(5) requires the insurer to tell the homeowner that the checklist is for "informational purposes only." The checklist cannot change the provisions of the contract. Id. Subsection 627.4143(6) even attempts to

create a rule of evidence prohibiting the admission of the checklist into evidence in a civil case. Thus, this serious mistake in the outline of coverage provides no avenue of redress for Ms. Cespedes.

Fifth, as the court's opinion explains, the "Special Provisions—Florida" endorsement contains both a sinkhole exclusion and a "Neutral Evaluation Program" section. In other words, Florida Peninsula has included the procedures for addressing a sinkhole claim in its standard form, while also excluding sinkhole coverage in that form. By including the sinkhole procedures in a standard form that never covers sinkholes, Florida Peninsula may not have created an ambiguity for a trained attorney, but I understand why the trial court concluded that it created an ambiguity for the homeowner. The supreme court has stated: "However, in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000) (citing Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 941 (Fla. 1979)). In this instance, the neutral evaluation portion of the policy cannot be given effect because there are no covered claims to which it can apply. This useless portion of the policy under the case law does not seem to create an ambiguity. Thus, I agree with the majority on this point because the law compels me to do so.