VILLANTI, Judge,
Concurring.
I fully concur in Judge Kelly’s opinion and write to point out that the generally convoluted structure of homeowner’s insurance policies in Florida did not work an injustice in this case. Even if Ms. Cespedes’ understanding of the policy was relevant — which it is not in the face of the policy’s unambiguous language, see SCG Harbourwood, LLC v. Hanyan, 93 So.3d 1197, 1200 (Fla. 2d DCA 2012) — the record arguably shows that she knew that her policy did not include coverage for sinkhole loss. At her deposition, Ms. Ces-pedes testified that she specifically recalled being informed that sinkhole coverage would require an extra premium, and she specifically elected not to pay that additional premium. Thus, it would be serendipitous indeed if we were to allow her alleged inability to understand the provisions of her written policy to supersede her knowledge that she opted not to pay the additional premium for sinkhole coverage or to operate as some sort of penalty on Florida Peninsula for using the incorrect font in a warning that Ms. Ces-pedes admittedly never read.
I also write to point out that insurance companies would be involved in much less litigation if they devised an alternative to *585 the current “one form fits all” approach that requires them to customize each “standard” policy through the use of endorsements and special provisions. This is particularly true for “sinkhole” coverage. Prior to 2007, all Florida insurers were required to include “sinkhole” coverage in all homeowner’s policies. This coverage included damage, however small, from all sinkhole activity, however small. But as of January 25, 2007, the legislature required insurers to provide coverage only for “catastrophic ground cover collapse”— a narrower term intended to limit the mandatory “sinkhole” coverage to only those situations in which, as the name implies, the top of the sinkhole has actually collapsed. See Ch. 2007-1, § 30, Laws of Fla. As of that date, insurers were no longer required to provide coverage for damage caused by a sinkhole that did not actually collapse, although they could continue to provide that broader coverage for an additional premium. While this change in the extent of coverage was significant, the ungainly terminology of “catastrophic ground cover collapse” has not caught on, and most insureds — and indeed probably many insurance agents — fail to appreciate that the standard homeowner’s insurance policy no longer covers all types of sinkhole activity that could result in damage to the insured’s home. Moreover, it appears that the standard homeowner’s policy forms have not been amended to account for this change either — providing nowhere on the “checklist of coverage” to indicate that coverage exists for “catastrophic ground cover collapse” as distinguished from “sinkhole” coverage.
These standard homeowner’s insurance policy forms, which consistently reference coverage terms and conditions that do not actually apply to any given policy and which fail to reflect statutory coverage changes that have been in effect for almost eight years, can be addling to even experienced agents, adjusters, and attorneys. Florida policyholders deserve better. However, an insured’s befuddlement resulting from these standard forms cannot create coverage where none otherwise exists. Hence, I agree that we must reverse the judgment in this case and remand for entry of summary judgment in favor of Florida Peninsula.