# Third District Court of Appeal
## State of Florida

Opinion filed May 26, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1075
Lower Tribunal No. 19-31273
_____

**Johan F. Hagstrom, et al.,**
Appellants,

vs.

**Co.Fe.Me. USA Marine Exhaust, LLC, etc., et al.,**
Appellees.

An appeal from the Circuit Court for Miami-Dade County, Maria de Jesus Santovenia, Judge.

EPGD Attorneys at Law, P.A., and Alberto M. Manrara, for appellants.

Tosolini, Lamura, Rasile & Toniutti, and S. David Sheffman, for appellees.

Before LINDSEY, MILLER, and LOBREE, JJ.

MILLER, J.

Appellant, Johan F. Hagstrom, appeals the denial of his petition to enjoin an arbitration initiated by his former employer, appellee, Co.Fe.Me. USA Marine Exhaust, LLC ("Marine Exhaust"), a dissolved Florida Limited Liability Company, by and through Giuseppe Mereghetti.[1] We have jurisdiction. See Fla. R. App. P. 9.130(a)(3)(C)(iv). Finding arbitration was properly invoked, we affirm.

## BACKGROUND

In 2008, Marine Exhaust, a now-dissolved Florida limited liability company, hired Hagstrom to serve as its managing member. Hagstrom and Marine Exhaust signed an employment contract providing for an initial one-year term with annual renewals at the sole discretion of the company. The contract contained an arbitration clause, reading, "[a]ny controversy, claim or dispute arising out of or relating to [the] Agreement or the employment relationship, either during the existence of the employment relationship or afterwards, between the parties hereto, their assignees, their affiliates, their attorneys, or agents, shall . . . be settled by arbitration."

On the same day that the parties executed the employment contract, Hagstrom, individually, and Mereghetti, on behalf of Co.Fe.Me. USA, Inc.

---

[1] Rena Hagstrom and Viking Marine Exhaust, Inc. are also styled as appellants. The order on appeal, however, does not adjudicate their interests.

2

("CUSA"), signed an operating agreement governing the internal affairs of Marine Exhaust. The operating agreement divided the interest of the company between its two members, Hagstrom, the minority interest owner, and CUSA, the majority interest owner. The agreement contained non-competition provisions and a broad arbitration clause, requiring the parties to submit "any dispute" to arbitration.

In late 2019, Marine Exhaust filed a written demand for arbitration with the American Arbitration Association against Hagstrom. It alleged that, after serving as the managing member of the company for nearly a decade, Hagstrom formed a competitor entity, Viking Marine Exhaust, Inc., in violation of contractual non-compete and loyalty provisions, and then secretly and fraudulently dissolved Marine Exhaust.

Hagstrom responded to the demand by filing a petition to enjoin or stay the arbitration proceedings in the circuit court. The lower tribunal convened a limited evidentiary hearing and subsequently denied relief. The instant appeal ensued.

## ANALYSIS

Recognizing "strong public policy" considerations, Florida law has historically favored agreements to resolve disputes by arbitration. 13 Parcels LLC v. Laquer, 104 So. 3d 377, 380 (Fla. 3d DCA 2012) (citation omitted).

This preference is codified in the Revised Florida Arbitration Code, which provides that an arbitration clause "is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." § 682.02(1), Fla. Stat. Although arbitration is unquestionably "a matter of consent, not coercion," and parties cannot be compelled to arbitrate when they have not agreed to do so, any doubts regarding arbitrability are resolved in favor of arbitration. Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S. Ct. 1248, 1256, 103 L. Ed. 2d 488 (1989); see also Bos. Bank of Com. v. Morejon, 786 So. 2d 1245, 1247 (Fla. 3d DCA 2001).

In accord with these principles, the role of the court in determining arbitrability is limited to the following inquiries: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999) (citation omitted).

As relevant to our analysis in this case, Hagstrom does not dispute he assented to not one, but two separate arbitration provisions. Instead, he argues as a non-signatory, Marine Exhaust cannot enforce the terms of the operating agreement and the employment contract is expired and unenforceable. We respectfully disagree with both assertions.

4

"A limited liability company is bound by and may enforce the operating agreement, regardless of whether the company has itself manifested assent to the operating agreement." § 605.0106(1), Fla. Stat. Thus, the absence of Marine Exhaust's signature on the operating agreement is of no legal significance and we decline to disturb the finding below the parties were bound by the operating agreement.

Further, as evidenced by the plain language of the employment contract, the parties contemplated and contracted for annual renewals. The pertinent clause contains no requirement that any such extension be reduced to writing, and the unrefuted allegations established Hagstrom remained continuously employed, performing his required managerial duties under the contract, until the company was dissolved. These facts support the conclusion the parties intended to effectuate renewal after the initial one-year period expired, and both considered themselves bound by the terms of the written contract.[2] See 17A Am. Jur. 2d Contracts § 17 (2021) ("If, after the expiration of a contract, the parties to the contract continue to perform under the contract's terms, the parties' relationship is generally governed by a new, implied in fact contract that incorporates the terms, or substantially

---

[2] The contract required written notice as a prerequisite to termination or resignation.

5

the same terms, of the expired contract.") (citations omitted); <u>Rothman v. Gold Master Corp.</u>, 287 So. 2d 735, 736 (Fla. 3d DCA 1974) (Where "an agreement expires by its terms and without more the parties continue to perform as before, an implication arises that they have mutually assented to a new contract containing the same provisions as the old; and ordinarily the existence of such a contract is determined by the objective test, that is, whether a reasonable man [or woman] would think the parties intended to make such a new binding agreement.") (citation omitted); <u>Rubenstein v. Primedica Healthcare, Inc.</u>, 755 So. 2d 746, 749 (Fla. 4th DCA 2000) ("[W]here an agreement expires by its terms and without more, the parties continue to perform as before, an implication arises that they have mutually assented to a new contract containing the same provisions as the old.") (citation omitted).

Hagstrom contends, however, that any action under the employment contract is barred by the statute of limitations. Under the narrow scope of our review, his contention fails. Firstly, the contract does not limit the period in which arbitration can be demanded. Secondly, "[o]nce it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." <u>John Wiley & Sons, Inc.</u>

v. Livingston, 376 U.S. 543, 557, 84 S. Ct. 909, 918, 11 L. Ed. 2d 898 (1964). Hence, such issues as "delay, laches, statute of limitations, and untimeliness raised to defeat compelled arbitration are issues of procedural arbitrability exclusively reserved for resolution by the arbitrator." Martin Domke, et al., Domke on Commercial Arbitration, 1 Domke on Com. Arb. § 15:16 (2020) (citation omitted); see Fed. Contracting, Inc. v. Bimini Shipping, LLC, 128 So. 3d 904, 905 (Fla. 3d DCA 2013) ("[T]he determination whether Bryan's claim is time-barred by the [applicable] statute of limitation is one for the arbitrator to decide.") (citation omitted); O'Keefe Architects, Inc. v. CED Constr. Partners, Ltd., 944 So. 2d 181, 188 (Fla. 2006) ("We hold that under [Florida law], a broad agreement to arbitrate, such as the one at issue in this case, includes the determination of statute of limitations defenses."); Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S. Ct. 588, 592, 154 L. Ed. 2d 491 (2002) ("'[P]rocedural questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide.") (citation omitted); see also Del Webb Comtys., Inc. v. Carlson, 817 F.3d 867, 873 (4th Cir. 2016) ("Procedural questions arise once the obligation to arbitrate a matter is established, and may include such issues as the application of statutes of limitations, notice requirements, laches, and estoppel.") (citations omitted).

Thus, having determined the parties assented to arbitration, we next examine whether the dispute is arbitrable. "[T]he test for determining arbitrability of a particular claim under a broad arbitration provision is whether a 'significant relationship' exists between the claim and the agreement containing the arbitration clause, regardless of the legal label attached to the dispute." Seifert, 750 So. 2d at 637-38 (citation omitted); see Hedden v. Z Oldco, LLC, 301 So. 3d 1034, 1037 (Fla. 2d DCA 2019) ("Whether an arbitrable issue exists . . . depends on whether there is a 'significant relationship' or 'nexus' between the dispute and the contract containing the arbitration provision.") (citation omitted); Waterhouse Constr. Grp., Inc. v. 5891 SW 64th St., LLC, 949 So. 2d 1095, 1100 (Fla. 3d DCA 2007) ("[B]ecause counts I and V are predicated on events directly relating to the performance of both agreements at issue, we find them to be arbitrable.").

In the instant dispute, both agreements contain broad arbitration clauses, encompassing "any dispute" or "controversy" between the parties. Further, the agreements expressly forbid the alleged acts of self-dealing and unfair competition that comprise the basis for the arbitration action. The operating agreement requires Hagstrom to "promote, enhance and carryout the business purpose" of the company, while exercising "due loyalty." Similarly, the employment contract contains a non-competition clause,

8

prohibiting Hagstrom from "directly or indirectly" soliciting business, performing services, or delivering goods "that are competitive to those of" Marine Exhaust. Consequently, the trial court properly determined there was a sufficient nexus between the allegations and the applicable contracts to establish arbitrability. See Seifert, 750 So. 2d at 640 ("If the contract places the parties in a unique relationship that creates new duties not otherwise imposed by law, then a dispute regarding a breach of a contractually-imposed duty is one that arises from the contract. Analogously, such a claim would be one arising from the contract terms and therefore subject to arbitration where the contract required it.") (citations omitted); Kaplan v. Kimball Hill Homes Fla., Inc., 915 So. 2d 755, 759 (Fla. 2d DCA 2005) ("Where an arbitration agreement provides for the arbitration of disputes relating to a contract, '[t]ort claims based on duties that are dependent upon the existence of the contractual relationship between the parties are normally arbitrable.'") (quoting Stacy David, Inc. v. Consuegra, 845 So. 2d 303, 306 (Fla. 2d DCA 2003)); see also First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943, 115 S. Ct. 1920, 1923, 131 L. Ed. 2d 985 (1995) ("[T]he arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute.") (citations omitted).

Lastly, we consider waiver. Here, Marine Exhaust invoked arbitration at the onset of the dispute, dispelling any suggestion of relinquishment of the right to arbitration. See Miller & Solomon Gen. Contractors, Inc. v. Brennan's Glass Co., Inc., 824 So. 2d 288, 291 (Fla. 4th DCA 2002) ("Because, the first substantive filing made by the Appellants was a motion to stay invoking the contractual arbitration clause, we conclude the trial court erred in finding that the Appellants waived their right to arbitration.").

Given these circumstances, we conclude the trial court providently found the elements of arbitrability were satisfied and there was no legal impediment to arbitration. See Audio Visual Innovations, Inc. v. Spiessbach, 119 So. 3d 522, 527 (Fla. 2d DCA 2013). Accordingly, we affirm the well-reasoned order under review.

Affirmed.