784 So.2d 557 (2001)
Caroline Jo McILMOIL, Appellant,
v.
Larry Neil McILMOIL, Appellee.
No. 1D00-2591.
District Court of Appeal of Florida, First District.
May 15, 2001.
*560 Mark Hulsey, III, of Mark Hulsey, III, P.A., Jacksonville, for Appellant.
Terroll J. Anderson, of Patterson, Bond & Latshaw, P.A., Jacksonville, for Appellee.
BROWNING, J.
Caroline J. McIlmoil (Former Wife) appeals the trial court's order on her motions for contempt and enforcement of the 1985 final judgment that dissolved her 10-year marriage to Larry Neil McIlmoil (Former Husband), the appellee. We reverse in part, affirm in part, and remand for further findings.
The parties were married in June 1974 and have three children: Tara Alana (born January 1978), Rory Devin (born February 1980), and Colin Shea Adair (born December 1981). In March 1985, Former Husband petitioned to dissolve the marriage. The final judgment of dissolution incorporated the parties' marital settlement agreement.
In May 1999 (14 years after the entry of the divorce decree), Former Wife filed a motion for contempt and a motion to enforce the dissolution decree, and in March 2000 amended her allegations. The crux of Former Wife's claims was that Former Husband had failed to comply with certain obligations to the children set forth in the final judgment of dissolution, and that as a result of his non-compliance, she had incurred substantial expenses and had to retain counsel. Former Wife sought reimbursement of $334,180.00[1] in children's expenses allegedly incurred as a result of Former Husband's non-compliance. Her calculations consisted of alleged actual expenses for the period from 1986 through part of 1999, and alleged estimated expenses for the period from the remainder of 1999 through 2004. Former Husband pled the affirmative defense of laches as a bar to Former Wife's claims. After a hearing on the motions, the trial court issued a May 2000 order. Former Wife appealed on the grounds that the lower court had reversibly erred in several respects.
First, Former Wife contends that the trial court misconstrued Paragraph 5 of the final judgment of dissolution, which (along with its preceding paragraph) states:
4. Except as herein provided, the parties shall not have any claims for alimony or support from the other.
5. That commencing June, 1985 the Husband shall pay to the Wife a minimum sum of 15% of his net monthly wages (gross monthly wages minus taxes) as child support for the support, maintenance, and education of the children. The Husband shall provide reasonable additional contribution towards the support, maintenance, and education of each of the children including medical and dental expenses, wedding expenses, clothing expenses and all other expenses necessary to maintain the children in reasonable comfort. The total monthly support shall be deemed to be divided in equal one-third portions between each of the three children. The equal one-third portion of the total support shall continue for each child until that child reaches the age of 22.5 years, marries, enters the armed forces, ceases to live with the Wife (except for those periods he or she *561 is enrolled in and attending college), becomes self-supporting or dies, whichever event occurs first. The Wife may claim each of the children as exemptions on her federal and state income tax returns.
In its challenged order, the trial court found 1) that Paragraph 5 obligated Former Husband to pay monthly support (5% per child) until each child reaches 22.5 years of age, so long as that child satisfies certain criteria specified in the dissolution judgment; 2) that Paragraph 5 does not provide that Former Husband make an additional contribution toward the support of his adult children, i.e., after they reach 18 years and until they reach age 22.5, when "child support" ceases; and 3) that Paragraph 5 does not include any provision obligating Former Husband to pay any of the following expenses: legal expenses, post-high school education costs, post-high school education loans, and automobile expenses. While agreeing on appeal that the language in the agreement is unambiguous, the parties dispute what is meant by "total monthly support" in Paragraph 5.
Former Wife argues that Paragraph 5 is unambiguous and obligated Former Husband to pay not only "child support" in the amount of "a minimum sum of 15% of his net monthly wages ... for the support, maintenance, and education of the children"; but also a "reasonable additional contribution towards the support, maintenance, and education of each of the children." The agreement expressly states that this "reasonable additional contribution" includes "medical and dental expenses, wedding expenses, clothing expenses and all other expenses necessary to maintain the children in reasonable comfort." The "total monthly support" is "to be divided in equal one-third portions between each of the three children," and "[t]he equal one-third portion of the total support shall continue for each child until that child reaches the age of 22.5 years" or any of several other enumerated contingencies (not applicable here) occur. Former Wife interprets the agreement to mean that "total monthly support" (which follows the references in Paragraph 5 to "child support" and "reasonable additional contribution") represents the sum of these two specified components. Former Wife asserts that in addition to "child support," the agreement obligated Former Husband to make a reasonable additional contribution to the children's college expenses (including post-high school education loans), the children's automobile expenses for travel to and from school and work, and expenses incurred in defending the children in legal proceedings.
On the other hand, Former Husband relies on the absence of the specific terms "legal expenses," "post-high school education costs," "post-high school education loans," and "automobile expenses" in Paragraph 5 to support his position that the final judgment did not obligate him to pay for any of such expenses.
The final judgment of dissolution, which incorporated the parties' marital settlement agreement, is to be interpreted like any other contract. That is, absent any evidence that the parties intended to endow a special meaning in the terms used in the agreement, the unambiguous language is to be given a realistic interpretation based on the plain, everyday meaning conveyed by the words. See Bergman v. Bergman, 145 Fla. 10, 199 So. 920, 921 (1940); Ballantyne v. Ballantyne, 666 So.2d 957, 958 (Fla. 1st DCA 1996); Woodworth v. Woodworth, 385 So.2d 1024 (Fla. 4th DCA 1980). In its written order, the trial court made no finding of ambiguity, and in their appellate briefs, the parties agree that the language in Paragraph 5 is *562 clear and unambiguous. At the motion hearing, Former Wife testified without dispute that she had not been represented by counsel during the parties' divorce. Former Husband had an attorney during the dissolution proceedings. Thus, to the extent that the terms of the parties' agreement are doubtful or ambiguous, they must be construed against Former Husband, as the party who drafted the document. See City of Homestead v. Johnson, 760 So.2d 80, 84 (Fla.2000). The interpretation of the wording and meaning of the marital settlement agreement, as incorporated into the final judgment, is subject to de novo review, for we are in as good a position as the trial court to construe the challenged provisions. See Cox v. CSX Intermodal, Inc., 732 So.2d 1092, 1096 (Fla. 1st DCA 1999); Angell v. Don Jones Insur. Agency Inc., 620 So.2d 1012 (Fla. 2d DCA 1993). Paragraph 5 refers to "child support" once and to the broader term "support" in the succeeding references. The reference to the cut-off at 22.5 years of age follows the references to Former Husband's "child support" obligation and to his obligation to provide a "reasonable additional contribution." We find no support in the record for Former Husband's suggestion that Paragraph 5 obligates him to pay only child support until the 22.5-year cut-off. Rather, the plain wording of the agreement obligates him to make a "reasonable additional contribution" towards the children's needs for the enumerated expenses (including "education") as well as "all other expenses necessary to maintain the children in reasonable comfort." Significantly, it is clear from the agreement that the parties contemplated that the children might enroll in and attend college, for that is one contingency in Paragraph 5 that would cover the children up to age 22.5 years even if they ceased to live with their mother. Thus, college expenses, including education loans, should be included in the additional contribution. To the extent necessary for the children to have transportation to and from school activities and/or work while their mother worked a full-time job, automobile expenses should be included in the additional contribution. Finally, the legal expenses incurred in defending the children in legal proceedings fall within "other expenses necessary to maintain the children in reasonable comfort." We reverse that portion of the trial court's order construing Paragraph 5 to the contrary. The court is directed on remand to determine what constitutes a "reasonable additional contribution" to be paid by Former Husband for the children's education expenses (including loans), automobile expenses, legal expenses, and any other claimed "expenses necessary to maintain the children in reasonable comfort."
Former Wife's second argument for reversible error relates to the trial court's finding that certain expenses claimed by her are unsupportable because she failed to make a contemporaneous demand on Former Husband and to provide credible proof of said expenses. Her claims for past health care costs, child care costs, and the costs of transporting the children for visitation[2] were denied on these grounds. Former Wife contends that the court improperly inserted additional conditions into the final judgment of dissolution concerning contemporaneous notice and proof of expenses where the parties never had agreed to such conditions. She asserts that the final judgment expressly included notice requirements *563 where the parties intended such conditions, i.e., Paragraphs 9 (requiring Former Wife to send "notification" by certified mail return receipt requested to Former Husband if she intends to initiate proceedings to mortgage, sell, or transfer title to the parties' jointly owned house and property in Illinois and cannot contact him by telephone for a consultation) and 10 (requiring Former Wife to give Former Husband "reasonable notification" before using his home in Jacksonville Beach, Florida, as a vacation home in the future). She suggests that the omission of any express notice requirements elsewhere in the agreement evinces the parties' lack of intent to agree to such a condition. Because Former Wife raises the objection to the "contemporaneity" requirement for the first time on appeal, the issue is not preserved for appellate review. In fact, at the motion hearing below, her attorney asserted that the evidence would show that Former Wife either had consulted Former Husband or had made contemporaneous submissions of those expenses for which she sought reimbursement. As to the requirement that Former Wife provide credible proof of expenses, we conclude that this condition is eminently reasonable to assure the accuracy and reliability of the figures. We affirm the trial court's findings regarding these past costs.
The trial court made a corollary finding that Former Wife had neither given Former Husband timely notice that her group medical and hospital insurance coverage was ending in 1994 nor demanded that he provide such insurance[3]. Although Former Wife offered some evidence to the contrary, competent substantial evidence in the record supports these factual findings.
The lower tribunal also found that Former Wife had not presented credible evidence to support her claim that Former Husband had arrearages on his monthly (5% per child) support arising between April 1985 and May 2000. Competent substantial evidence supports this finding.
As her third ground for relief, Former Wife contends that the trial court erred in ruling that laches bars her claims for health care costs, child care costs, and visitation transportation expenses. Given that laches is an affirmative defense, Former Husband had the burden to prove its applicability by clear and positive evidence. See Van Meter v. Kelsey, 91 So.2d 327, 332 (Fla.1956). The test for application of this doctrine has four parts:
In order for a defendant to avail himself of the defense of laches, the evidence must show: 1) conduct on the part of the defendant, or on the part of one under whom he claims, giving rise to the situation of which the complaint is made; 2) the plaintiff, having had knowledge of the defendant's conduct, and having been afforded the opportunity to institute suit, is guilty of not asserting his rights by suit; 3) lack of knowledge on the defendant's part that the plaintiff *564 will assert the right on which he bases his suit; and 4) injury or prejudice to the defendant in the event relief is accorded to the plaintiff or the suit is held not to be barred.
Wing v. Wing, 464 So.2d 1342, 1344 (Fla. 1st DCA 1985); see Van Meter, 91 So.2d at 330-31. We conclude that the trial court correctly found the four elements of laches were satisfied, at least regarding Former Wife's older, undocumented claims.
The first element of laches was satisfied in that Former Husband's alleged nonpayment of certain expenses was the basis for Former Wife's motions for contempt and enforcement. Regarding the second element of laches, Former Wife testified that she had been aware of the expenses in question as well as Former Husband's non-payment as each expense occurred. Paragraph 12 of the final judgment of dissolution states that, except for certain provisions not relevant here, the trial court "retains jurisdiction to enforce and modify the provisions" therein. Trying to explain why she had not sent Former Husband written requests for payments due in 1986-93, Former Wife testified that she had believed she would have to come to court to do something about his alleged non-compliance. She claimed that she could not afford a lawyer then. Competent substantial evidence supports the trial court's rejection of her claim of lack of financial means to return to court until 1999, 14 years after the parties' divorce. Former Wife had the ability to file a timely motion to assert her claim, but she failed to do so. The second element was satisfied. The third element of laches was satisfied as well, for the court found that Former Wife had never advised Former Husband that she intended to claim reimbursement of the expenses in question. He testified that he did not remember her ever sending any timely requests for reimbursement for any of the items claimed in the motions. The court accepted Former Husband's assertion that Former Wife had waited so long to claim these expenses that he had no reasonable basis to believe that she would bring an action for contempt and/or enforcement. The fourth and final element of laches was satisfied by the evidence that Former Wife's lengthy delay in requesting reimbursement of her expenses denied Former Husband a reasonable opportunity to question her expenses, to confer with her about the expenses, and to determine their reasonableness, necessity, and validity. Former Husband said that he no longer had adequate documentation of many of the payments that he had made years ago. Likewise, Former Wife was unable to produce her bills or receipts related to years-old expenses. The record demonstrates that Former Husband would be prejudiced in the event relief were accorded to Former Wife concerning the old expenses.
However, given the fact that two of the parties' children are still under the age of 22.5, Former Wife is not precluded from asserting claims for reimbursement of the more recent, and the future, expenses for which Former Husband is obligated under the terms of the final judgment, as clarified in this opinion. These more recent expenses would not necessarily be subject to the affirmative defense of laches. Of course, the efficacy of any such claims for recent and future expenses will depend upon Former Wife's providing timely notice and adequate proof of the expenses.
To the extent that our ruling affirms the denial of Former Wife's past claims, it should not be construed as a condonation of any obligor former spouse's pattern of non-compliance with the financial obligations set forth in a final judgment of dissolution of marriage. In the unfortunate, albeit common situation where divorced parties are unable to cooperate *565 or communicate sufficiently to assure the orderly carrying out of the financial obligations ordered by the court, the complaining party has the ultimate option of returning to court to seek enforcement and compliance. Attendant to that right, however, is the complaining party's obligation to maintain adequate documentation of amounts spent and owed, to keep a proper record of the nature of the expenses, and to make a timely demand of the amounts claimed.
We REVERSE the order on Former Wife's amended motion for contempt and motion to enforce final judgment to the extent that the lower court misconstrued Former Husband's obligations under Paragraph 5, and REMAND for further findings regarding his "reasonable additional contribution." We AFFIRM the denial of Former Wife's motion for trial attorney's fees and her claims for reimbursement of past expenses that were not properly noticed and/or proven or were found to be barred by laches. Our holding is without prejudice to Former Wife to assert claims for reimbursement of eligible expenses that are timely demanded and adequately proven.
DAVIS and PADOVANO, JJ., concur.
NOTES
[1] By the hearing date, Former Wife had reduced her claim of arrearages to $157,090.23.
[2] Paragraph 3(e) of the final judgment states that "Husband shall be responsible for transporting the children to and from the Wife's residence and shall bear all expenses incurred therein."
[3] Paragraph 6 of the final judgment of dissolution states:

The Wife shall maintain her present group medical and hospitalization insurance, received as a benefit of her employment with HSI Management, Inc. Such insurance shall be used to pay medical, drug, clinic, hospital and dental charges incurred for the benefit of the children. The Husband shall either (1) provide group medical and hospitalization insurance, if he receives such insurance as a benefit of employment, or (2) obtain private group medical and hospitalization insurance for the medical, drug, clinic, hospital and dental charges incurred for the benefit of the children in the event the Wife is unable to maintain her group medical and hospitalization insurance because of loss of employment, or a reduction in employment benefits.