MORRIS, Judge.
Polytimi Emmenegger, the mother, appeals an amended order setting the amount of child support to be paid by Andre Emmenegger, the father, for the support of the parties’ three minor children after the parties’ oldest child reached majority age.[1] We reverse and remand for the trial court to recalculate the fa *1104 ther’s child support obligation in a manner consistent with this opinion.
I. Background
The parties divorced in 2003. The final judgment of dissolution adopted a marital settlement agreement that provided that the father would pay $2184 per month in child support for the parties’ four children and $5000 a month in alimony to the mother. In 2005, the trial court entered a stipulated supplemental final judgment adopting another agreement by the parties. This 2005 agreement and judgment increased the child support to $2400 per month and reduced the alimony to $4000 per month. The judgment specifically stated that “[t]he parties[’] visitation arrangements outlined herein will not be considered as the [f]ather[’s] having 40% of time with the children.” At the time, if a parenting schedule provided that a parent spend 40% of the overnights with their children, that parent was entitled to an adjustment in his or her child support obligation. See § 61.30(ll)(b)(10), Fla. Stat. (2005).
In 2007, the trial court entered a second supplemental final judgment reducing child support and alimony. This 2007 judgment was not entered as the result of an agreement but was entered after a final hearing before the trial court. In this 2007 judgment, the trial court found that the father suffered a 22.32% reduction in his income and the trial court reduced his alimony and child support to represent 48.86% of his income, noting that the trial court “intend[ed] to preserve the approximate ratio [that was used] at the time of the Final Judgment of Dissolution of Marriage.” The trial court accordingly reduced the child support to $2078 per month and the alimony to $2750 per month. The 2007 judgment specifically stated that “[a]ll paragraphs in the Final Judgment of Dissolution of Marriage and the Stipulated Supplemental Final Judgment other than those modified by this Order shall remain in full force and effect.”
In 2010, the father filed a supplemental petition for modification, seeking to modify his child support based on his oldest son’s reaching majority age. He claimed that he had unsuccessfully tried to get the mother to agree to reduce the child support for the remaining three minor children to $1760.88 per month, which represented the guidelines amount that did “not include a credit for 20% of overnights.” The 20% was a reference to the amended version of section 61.30(ll)(b), which provides that “ ‘substantial amount of time’ means that a parent exercises time-sharing at least 20 percent of the overnights of the year.” § 61.30(ll)(b)(8), Fla. Stat. (2010); ch.2010-199, § 5, at 2418 Laws of Fla. The father filed an amended supplemental petition, alleging one count for modification of child support, one count for modification of time-sharing, and one count for modification of alimony based on the mother’s financial situation. In response, the mother sought an increase in alimony based on the father’s increased income. The father filed an amendment to his amended supplemental petition, adding a count for declaratory relief.
The mother filed a motion for summary judgment, and after a hearing on November 24, 2011, the trial court entered an order on the mother’s motion for summary judgment. The trial court granted the mother’s motion as it related to the father’s counts for modification of child support and time-sharing, pursuant to a stipulation by the father. The trial court found that an issue of material fact existed on the issue of alimony and subsequently held a hearing on alimony on April 24 and 25, 2012. As a result of the hearing, the trial court found that the mother did not have an increase in income but that the father had an 18.17% increase in his net income since the 2007 final judgment. Therefore, *1105 the trial court increased the father’s alimony obligation to $3200 per month, which was approximately 23% of the father’s income as it was in the 2007 judgment. The court reserved jurisdiction to determine all issues regarding child support.
Due to the increase in the mother’s alimony award, the father filed a motion to determine child support payment, claiming that he should pay $1010 per month for three children. He also filed a motion for reduction in child support. This time, the father’s calculations did include an adjustment in the father’s proposed child support obligation on the basis of substantial time-sharing, using the specific figure that the father exercises 42.47% of the overnights with the children. The trial court held a hearing on July 10, 2012. The parties stated that they could not agree on whether the father’s amount of overnights should result in the father’s receiving a credit towards his child support obligation under section 61.30(ll)(b). The mother argued that in the 2005 agreement, the father “waived his right to [receive a statutory credit for] substantial time[-]sharing” and that as a result, the current child support amount “should not take into account substantial time[-]sharing.”
And ... I’m coming into court to ask the Court to continually follow what the parties have done in their contract....
The purpose of their [ajgreement was really clear. He does not obtain the benefit of substantial time[-]sharing. And therein, when there was a prior hearing [in 2007] when they adjusted the child support, and he was having the same 156 overnights, and there was no adjustment for substantial time[-]sharing.
And then this agreement in 2005 when he had adjusted his child support, when he had 156 overnights and they did not adjust child support based upon time[-]sharing....
So, I don’t understand why I’m looked upon as this unique kind of argument. This a very straightforward argument based upon their contract, their prior behavior and agreement, and what the law provides you [the] ability to do in these kind of situations.
The mother went on to argue that the father’s pleading never asked that the father receive a credit for substantial time-sharing. The mother argued that the 2007 supplemental judgment “did not apply the substantial time-sharing to his child support calculations.” Regarding the change in the statute from 40% to 20%, the mother argued that the change in the statute “does not modify the intentions of the parties under their prior stipulation.”
The trial court ruled that the 2005 agreement “does not say that if the law changes, or if the father gets a certain amount of time-sharing, that in the child support calculation that he will not receive any sort of threshold time[-]sharing.”
I don’t think there is any doubt that it’s inferred that he won’t get up to 40 percent. So, I’m going to calculate it at 39 percent, which is less than the 40 percent, which is exactly what the Agreement says.
The Agreement doesn’t say that the father won’t get any sort of threshold on the amount of overnights for time[-] sharing. It says that he won’t get 40 percent or he won’t be considered to have 40 percent. So since he has actually more than 40 percent, we’ll assume that he has 39 percent which is 142.
So, we’ll plug in 142 overnights with everything else and that’s the answer.
The trial court entered a written order consistent with its oral rulings, reducing the father’s child support obligation to $1178 per month for three children.
II. Analysis
On appeal, the mother first argues that the trial court unreasonably interpreted *1106 the provision in the 2005 agreement when it calculated the father’s child support obligation in 2012. The mother contends that in 2005, the parties “agreed that [the father] would not receive the benefit of the concomitant reduction in his child support obligation based upon a substantial shared time[-]sharing schedule.” The mother contends that “[t]he only logical and reasonable interpretation of the term in the [2005 judgment] ... is that the parties intended for this to have special meaning related to child support.” The mother argues that any other interpretation would render the 2005 provision meaningless.
This court applies a de novo standard of review to the trial court’s interpretation of the parties’ 2005 agreement. See Johnson v. Johnson, 848 So.2d 1272, 1273 (Fla. 2d DCA 2003) (citing Kipp v. Kipp, 844 So.2d 691, 691 (Fla. 4th DCA 2003); McIlmoil v. McIlmoil, 784 So.2d 557, 561 (Fla. 1st DCA 2001)). “Settlement agreements are to be interpreted in accordance with laws governing contracts.” Id. “Courts must ‘construe contracts in such a way as to give reasonable meaning to all provisions,’ rather than leaving part of the contract useless.” Publix Super Mkts., Inc. v. Wilder Corp. of Del., 876 So.2d 652, 654 (Fla. 2d DCA 2004) (quoting Hardwick Props., Inc. v. Newbern, 711 So.2d 35, 40 (Fla. 1st DCA 1998)). “When interpreting a contract, a court should ascribe terms their plain meaning and attempt to place itself as close as possible to the position occupied by the parties at the time the contract was executed, keeping in mind the goal to be accomplished by the agreement.” Conway v. Conway, 111 So.3d 925, 927 (Fla. 1st DCA 2013) (citing Delissio v. Delissio, 821 So.2d 350, 353 (Fla. 1st DCA 2002)).
At the time the parties entered into the stipulated agreement in 2005, section 61.30(ll)(b) allowed an adjustment in the child-support calculations when the parenting arrangement provides for the child or children to “spend a substantial amount of time with each parent.” § 61.30(ll)(b), Fla. Stat. (2005). For purposes of this statutory adjustment, “ ‘substantial amount of time’ means that the noncustodial parent exercises visitation at least 40 percent of the overnights of the year.” § 61.30(ll)(b)(10). Generally, the case law holds that this statutory adjustment is mandatory and that a party need not request it in order for a party to receive its benefit. See Keeley v. Keeley, 899 So.2d 387, 388 (Fla. 2d DCA 2005); Migliore v. Harris, 848 So.2d 1250 (Fla. 4th DCA 2003); Santiago v. Santiago, 830 So.2d 922, 923 (Fla. 4th DCA 2002). But the issue in this case is whether the father expressly waived his right to this statutory reduction.
The provision at issue in the 2005 agreement specifically states that “[t]he parties[’] visitation arrangements outlined herein will not be considered as the [f]a-ther[’s] having 40% of time with the children.” It is clear from the wording of the provision and the other provisions in the agreement relating to child support and visitation that the parties intended for the father’s visitation schedule to have no effect on the father’s child support obligations. Specifically, the parties intended that the father would pay a specific amount of child support, that the father would receive 40% of the overnights with the children,[2] and that the father would *1107 not receive the adjustment in his child support obligation that he would otherwise legally be entitled to under section 61.30(ll)(b). The goal to be accomplished by the agreement was that the father would provide a particular amount of support for his children without consideration of his substantial time-sharing. There is no other reasonable reading of this provision; there was no reason why the father’s 40% visitation would need to be “considered” other than for the purpose of child support.
The father claims that the parties “could have agreed that [the father] would not get the benefit of a statutorily-mandated reduction for substantial time-sharing” but that they did not expressly agree to that. But the father has not given any other meaning to this provision or explained why the 40% visitation would be relevant to any issue other than the statutory reduction in child support in the 2005 version of section 61.30(ll)(b)(10). The trial court interpreted the provision at issue to be merely an acknowledgement by the father that he did not receive 40% of the visitation with the children in the 2005 agreement, but this interpretation is inconsistent with a clear reading of the visitation schedule provided in that 2005 agreement and with the father’s admission that he received at least 40% of the overnights with the children.
We note that when the trial court reduced the father’s child support in 2007, it did not adjust the father’s obligation in accordance with the statutory adjustment in section 61.30(ll)(b)(10). The trial court stated in the 2007 order that in reducing the father’s alimony and child support, it was effectively “preserving] the approximate ratio” that the father agreed to pay in his final judgment in 2003. The 2007 judgment did not alter the provision at issue in the 2005 agreement; rather, the 2007 judgment specifically provided that “[a]ll paragraphs in ... the Stipulated Supplemental Final Judgment other than those modified by this Order shall remain in full force and effect.”
Because the provision in the 2005 agreement clearly indicates the parties’ intention to not give the father a statutory adjustment in his child support based on his substantial time-sharing, the trial court erred in applying the adjustment in section 61.30(ll)(b), absent some substantial change in circumstances that would justify overlooking the father’s earlier waiver of his right to that statutory reduction. See Knight v. Knight, 702 So.2d 242, 243 (Fla. 4th DCA 1997) (noting the “well[-]established rule that when ‘the child support was based on an agreement by the parties that was subsequently incorporated into an order, a heavier burden rests on the party seeking a reduction than would otherwise be required’ ” (quoting Overbey v. Overbey, 698 So.2d 811, 814 (Fla.1997))); cf. Seiberlich v. Wolf, 859 So.2d 570 (Fla. 5th DCA 2003) (holding that in modification proceeding, trial court should have adjusted child support based on substantial time-sharing even though the father had earlier agreed to pay child support without such an adjustment; trial court found that circumstances had changed based on father’s reduction in income). The father sought the instant reduction in child support based on the parties’ oldest child’s reaching majority age and no other factual change in circumstances. He did not seek the reduction in child support based on any reduction in his income; in fact, the father’s income had increased since his child support had been reduced in 2007. The father does argue on appeal that the 2010 amendment to section 61.30(ll)(b) is relevant. He contends that the 2005 agreement did not address “a potential future mandatory change in the law,” but he does not explain how this change in the law now entitles him to the statutory re- *1108 duetion that he waived when he entered into the 2005 agreement.
The father contends that the trial court did not err because the statutory adjustment for child support based on substantial time-sharing is mandatory. But the cases holding that the adjustment is mandatory do not involve a parent who expressly agreed to waive the right to have his child support adjusted. Cf., e.g., Migliore, 848 So.2d 1250.
The mother raises other issues on appeal, but in light of our reversal, such issues are rendered moot. We reverse the amended order setting amount of child support and remand for the trial court to recalculate the father’s child support obligation in accordance with the parties’ prior agreement and without the statutory adjustment for the father’s substantial time-sharing.
Reversed and remanded.
CRENSHAW, J., and DAKAN, STEPHEN L., Associate Senior Judge, Concur.

. The order also sets the amount of child support the father must pay when the parties’ second child reaches majority age.

. The parties both agree on appeal that the visitation schedule in the 2005 agreement gave the father more than 40% of the overnights with the children. And when the father sought a reduction in child support after the alimony had been increased, the father submitted child support worksheets confirming that the father has at least 40% of overnights with the children.