WELLS, Judge.
Gulliver Schools, Inc. appeals from a trial court order granting plaintiff Patrick Snay’s motion to compel enforcement of settlement agreement. The school maintains Snay is precluded from enforcing the agreement because he violated a material term, the non-disclosure clause, when he disclosed to his daughter that his case against Gulliver was settled and he was happy with the result. We agree with the school and reverse.[1]
When Gulliver did not renew Snay’s 2010-2011 contract as the school’s headmaster, Snay filed a two count complaint asserting causes of action for age discrimination and retaliation under the Florida Civil Rights Act. On November 3, 2011, the parties executed a general release and a settlement agreement for full and final settlement of Snay’s claims, with the school to pay $10,000 in back pay to Snay with “Check # 1”; $80,000 to Snay as a “1099” with “Check # 2”; and $60,000 to Snay’s attorneys with “Check # 3.”
Central to this agreement was a detailed confidentiality provision, which provided that the existence and terms of the agreement between Snay and the school were to be kept strictly confidential and that should Snay or his wife breach the confidentiality provision, a portion of the settlement proceeds (the $80,000) would be disgorged:
13. Confidentiality ... [T]he plaintiff shall not either directly or indirectly, disclose, discuss or communicate to any entity or person, except his attorneys or other professional advisors or spouse any information whatsoever regarding the existence or terms of this Agreement ... A breach .. .will result in disgorgement of the Plaintiffs portion of the settlement Payments.
Only four days after the agreement was signed, on November 7, 2011, Gulliver notified Snay that he had breached the agreement based on the Facebook posting of Snay’s college-age daughter, wherein she stated:
Mama and Papa Snay won the case against Gulliver. Gulliver is now officially paying for my vacation to Europe this summer. SUCK IT.[2]
*1047 This Facebook comment went out to approximately 1200 of the daughter’s Face-book friends, many of whom were either current or past Gulliver students.
Although the settlement agreement expressly accorded Snay the unilateral right to revoke the agreement within seven days of its execution (that is, by November 10), Snay took no action to revoke the agreement despite Gulliver’s notification of breach.
On November 15, 2011, Gulliver sent a letter to Sna/s counsel, stating that it was tendering the attorney’s fees portion of the parties’ agreement but was not going to tender Sna/s portion because he had breached the confidentiality provision.[3] That letter included a Joint Stipulation for Dismissal which reconfirmed in part that “the parties have settled this action,” and Snay signed off on it and returned it to Gulliver. The action was dismissed with a reservation of jurisdiction for enforcement of the settlement agreement.
On June 9, 2012, Snay filed his motion to enforce the settlement agreement, arguing that his statement to his daughter and her comment on Facebook did not constitute a breach. After giving Gulliver an opportunity to take the depositions of the Snays and their daughter, the court below conducted a hearing at which the parties agreed to rely on deposition testimony for the purposes of determining whether there had been a breach of the confidentiality provisions of the settlement agreement. Following that hearing, the court below entered an order finding that neither Snay’s comments to his daughter nor his daughter’s Facebook comments constituted a breach of the confidentiality agreement. We disagree and reverse.
A settlement agreement must generally “be interpreted like any other contract. That is, absent any evidence that the parties intended to endow a special meaning in the terms used in the agreement, the unambiguous language is to be given a realistic interpretation based on the plain, everyday meaning conveyed by the words.” McIlmoil v. McIlmoil, 784 So.2d 557, 561 (Fla. 1st DCA 2001).
It is axiomatic that the clear and unambiguous words of a contract are the best evidence of the intent of the parties. See Murry v. Zynyx Mktg. Communications, Inc., 774 So.2d 714 (Fla. 3d DCA 2000). Where contracts are clear and unambiguous, they should be construed as written, and the court can give them no other meaning. See Institutional & Supermarket Equip., Inc. v. C & S Refrigeration, Inc., 609 So.2d 66, 68 (Fla. 4th DCA 1992). In construing a contract, the legal effect of its provisions should be determined from the words of the entire contract.
Khosrow Maleki P.A. v. M.A. Hajianpour, M.D., P.A., 771 So.2d 628, 631 (Fla. 4th DCA 2000); see Walgreen Co. v. Habitat Dev. Corp., 655 So.2d 164, 165 (Fla. 3d DCA 1995) (“When a contract is clear and unambiguous, the court is not at liberty to give the contract ‘any meaning beyond that expressed.’ ” (quoting Bay Mgmt. Inc. v. Beau Monde, Inc., 366 So.2d 788, 791 (Fla. 2d DCA 1978))); see e.g. Spring Lake NC, LLC v. Figueroa, 104 So.3d 1211,1214 (Fla. 2d DCA 2012) (“If a contract provision is clear and unambiguous, a court may not consider extrinsic or parol evidence to change the plain meaning set forth in the contract.” (quoting SCG Harbourwood, LLC v. Hany an, 93 So.3d 1197, 1200 (Fla. 2d DCA 2012))).
In this case, the plain, unambiguous meaning of paragraph 13 of the agreement between Snay and the school is that neither Snay nor his wife would “either di *1048 rectly or indirectly ” disclose to anyone (other than their lawyers or other professionals) “any information” regarding the existence or the terms of the parties’ agreement.
Because Snay’s deposition testimony that “[m]y conversation with my daughter was that it was settled and we were happy with the results,” establishes a breach of this provision, the court below should have denied his motion for enforcement of the agreement.[4] The fact that Snay testified that he knew he needed to tell his daughter something did not excuse this breach. There is no evidence that he made this need known to the school or to his or its attorneys so that the parties might hammer out a mutually acceptable course of action in the agreement. Rather, before the ink was dry on the agreement, and notwithstanding the clear language of section 13 mandating confidentiality, Snay violated the agreement by doing exactly what he had promised not to do.[5] His daughter then did precisely what the confidentiality agreement was designed to prevent, advertising to the Gulliver community that Snay had been successful in his age discrimination and retaliation case against the school.
Based on the clear and unambiguous language of the parties’ agreement and Snay’s testimony confirming his breach of its terms, we reverse the order entered below granting the Snays’ motion to enforce the agreement.
Reversed.

. Our standard of review is de novo. Gray v, D &J Indus. Inc., 875 So.2d 683, 683 (Fla. 3d DCA 2004) (“The construction of a contract is a question of law for the courts to determine where the language used in the written contract is clear, unambiguous, and susceptible of only one interpretation.”); see also Abel Homes at Naranja Villas, LLC v. Hernandez, 960 So.2d 891, 893 (Fla. 3d DCA 2007) (same).

. Snay’s position was that he never told the daughter that he had "won" the case and the daughter did not go to Europe that summer, nor had she planned to do so. This, however, does not change our analysis.

. It later tendered the back wages ($10,000) portion of the agreement.

. The significance of this provision is evidenced by the fact that Snay’s entitlement to a significant sum of money is expressly conditioned on his compliance with this provision. It is also highlighted by the ramifications visited on Gulliver as a consequence of Snay’s breach/disclosure when his daughter communicated to 1200 people, many associated with Gulliver, that Snay had been justified in his discrimination and retaliation claims.

. According to Snay he knew the litigation was important to his daughter and he knew he would have to tell her something about its resolution. So moments after signing the agreement, he had a conversation with his wife, and they agreed to inform their daughter that the case was settled and they were happy with the result.
Snay explained:
What happened is that after settlement my wife and I went in the parking lot, and we had to make some decisions on what we were going to tell my daughter. Because it's very important to understand that she was an intricate part of what was happening. She was retaliated against at Gulliver. So she knew we were going to some sort of mediation. She was very concerned about it. Because of what happened at Gulliver, she had quite a few psychological scars which forced me to put her into therapy.
So there was a period of time that there was an unresolved enclosure for my wife and me. It was very important with her. We understood the confidentiality. So we knew what the restrictions were, yet we needed to tell her something.