IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

CARLINI V. GRAY TELEVISION GROUP

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

LEWYS CARLINI, APPELLANT,

V.

GRAY TELEVISION GROUP, INC., APPELLEE.

Filed May 2, 2017.    No. A-15-1239.

Appeal from the District Court for Lincoln County: RICHARD A. BIRCH, Judge. Affirmed.

Abby Osborn and Joy Shiffermiller, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Shawn D. Renner and Susan K. Sapp, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee

INBODY, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Lewys Carlini appeals the order of the district court for Lincoln County which granted summary judgment in favor of Gray Television Group, Inc. (Gray). We affirm.

## II. BACKGROUND

Carlini was employed by Gray as a general manager for a television station. Upon his termination in September 2014, the parties entered into a severance agreement. Gray agreed to pay Carlini $32,307.65 in 16 biweekly payments in exchange for which Carlini made a number of promises to Gray, including releasing Gray from all claims and liabilities, not filing any legal

action against Gray, and not seeking reemployment with Gray. Paragraph 6 of the agreement further provided as follows:

> **Confidentiality and Non-disparagement.** Employee agrees that the existence of this Agreement, the substance of this Agreement, and the terms of this Agreement shall be kept absolutely and forever confidential. To this end, Employee agrees not to disclose any information about this Agreement to any person or entity and further agrees that Employee will not discuss, publish, or disseminate any written material relating to the Agreement or its terms, unless compelled to do so by a court of competent jurisdiction, except that Employee may disclose the terms of the Agreement to Employee's spouse, attorneys, tax advisors, and financial advisors, who must be informed of and agree to be bound by the confidentiality provisions contained in this Agreement. Employee agrees that Employee will not make any disparaging public remarks about the Company or any of its officers, directors, agents, or employees. Employee agrees that if Employee violates the provisions contained in this Paragraph 6 of the Agreement, Employee will immediately forfeit and/or return to the Company all severance payments made to Employee under the terms of this Agreement.

Prior to signing the agreement, Carlini reviewed its contents with two attorneys. Carlini did not negotiate any of the agreement's terms before signing it.

On or around October 14, 2014, Gray suspended Carlini's former coworker, Joe Swift, from appearing on air. This suspension was due in part to comments that Swift made on-air regarding two other coworkers who had left Gray's employment. Swift's employment was terminated the next day.

Shortly after Swift was terminated, Carlini and his wife attended several get-togethers that included Swift, Swift's wife, and several other coworkers, friends, and their spouses. During these get-togethers, the groups discussed Carlini and Swift's terminations from Gray. Carlini told the groups that he had "a very generous severance agreement," but he did not discuss any details of the agreement. Around this same time, Carlini made this same statement to several other people including his mother, his brothers, "probably [his] whole family," as well as other friends. In an interview with a local newspaper following his termination, Carlini advised the reporter he was "reviewing an agreement" and was unable to answer several of her questions.

Sometime after his termination, Carlini became a member of a Facebook group called "Bring back Chris Schukei." The name of the group referenced another former employee of Gray. The Facebook group was open to the public so that anyone could access it and read the posts contained therein. Many of the posts in the group negatively portrayed Gray. Carlini was an administrator of the group, although it is unclear how he came to be in such position. Carlini testified that he did not know he was an administrator nor did he exercise any capabilities of an administrator.

On October 15, 2014, Carlini posted a YouTube video in this Facebook group showing the segment of the newscast in which Swift had addressed two of his departing coworkers. The title of the YouTube clip was "Can you believe this sportscaster was suspended for this?" Carlini did not originally post the news clip to YouTube, but he did add the comment, "And now fired. . . . " to his post of the video in the Facebook group.

Gray was scheduled to begin making severance payments to Carlini on October 3, 2014. Gray made payments on October 3 and October 17, for a total of $8,076.92. Gray did not make any additional payments after that date because it claimed that Carlini had breached their agreement through disclosure of the agreement's existence and disparagement of the company.

Carlini filed a complaint against Gray for breach of contract. He subsequently filed a motion for summary judgment and Gray filed a cross-motion for summary judgment. After a hearing, the district court determined that Carlini had breached the agreement by disclosing its existence. Accordingly, it granted Gray's motion for summary judgment and overruled Carlini's motion. Carlini now appeals.

## III. ASSIGNMENTS OF ERROR

Carlini assigns, restated and renumbered, that the district court erred in (1) failing to view the facts in the light most favorable to the non-moving party; (2) finding that Carlini breached the terms of the contract; (3) failing to find that Gray breached the contract before Carlini's alleged breach; (4) finding no genuine issue of material fact and that Gray was entitled to judgment as a matter of law; and (5) awarding damages to Gray. Carlini also assigns that the district court erred in overruling his motion for summary judgment.

## IV. STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as matter of law. *Siouxland Ethanol, LLC v. Sebade Brothers, LLC*, 290 Neb. 230, 859 N.W.2d 586 (2015). An appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible therefrom. *Id.* When reviewing cross-motions for summary judgment, an appellate court acquires jurisdiction over both motions and may determine the controversy that is the subject of those motions. *Johnson v. Nelson*, 290 Neb. 703, 861 N.W.2d 705 (2015).

## V. ANALYSIS

Before we begin our analysis, we note that the severance agreement contains a choice of law provision stating that it will be interpreted, enforced, construed, and governed by Georgia law. Neither party raised this issue in the trial court and the trial court relied on Nebraska law in its order. Gray raised the issue in its brief on appeal to assert that the law at issue in this case is the same in both Georgia and Nebraska. Because the trial court relied on Nebraska law in its order and both parties rely on Nebraska law in their briefs, we will use Nebraska law in our analysis.

### 1. FAILURE TO VIEW FACTS IN LIGHT MOST FAVORABLE TO CARLINI

Carlini's first assignment of error is that the district court erred in failing to view the facts in the light most favorable to the non-moving party. The entirety of Carlini's argument as to this assignment of error is that:

> [Gray] has not provided any disinterested witnesses while the Appellant provided substantial evidence from disinterested witnesses which disputed the Appellee's claims

and/or supported conflicting inferences that should have been drawn in the Appellant's favor. There was further confusion by the Appellee (and inappropriately adopted by the Trial [sic] court) over what facts are "material." The Appellant presented substantial factual statements to rebut the claims, and to produce a fuller record for summary judgment, but the trial Court [sic] ignored many of the facts and evidence presented by the Appellant.

Brief for appellant at 23-24.

From our understanding of Carlini's argument, he claims that he presented evidence and "factual statements" that rebutted Gray's claims, but the district court did not draw all reasonable inferences in his favor. However, Carlini does not identify the evidence to which he is referring. He does not direct our attention to any particular witness testimony or statements of fact that he believes were not viewed in his favor. Our rules of appellate practice require that factual recitations be annotated to the record, whether they appear in the statement of facts or argument section of a brief. See Neb. Ct. R. App. P. §§ 2-109(D)(1)(g) and (i). Furthermore, the district court stated in its order that it had viewed the evidence in the light most favorable to the party against whom summary judgment was sought.

Our standard of review requires this court to review the evidence in the light most favorable to Carlini, which we have done. In the absence of any direction from Carlini as to which evidence the district court did not view in his favor, and in consideration of the court's explicit statement that it had viewed the evidence in Carlini's favor, we reject Carlini's argument that the district court erred in its review of the evidence.

## 2. BREACH OF CONTRACT

### (a) Breach by Carlini

Carlini argues that the district court erred in finding that he breached the terms of the contract. He claims that his disclosure that he had received a generous severance package was not a breach, and that even if he did violate the agreement, it did not constitute a material breach and Gray was still obligated to perform.

Carlini also argues at length that this court should find that he did not breach the nondisparagement clause of the severance agreement. However, the trial court did not grant judgment to Gray on this issue; rather, it determined it need not decide whether Carlini's actions constituted a material breach of the nondisparagement clause because Carlini materially breached the nondisclosure provision of the agreement. Therefore, our analysis will focus on the findings that the trial court did make, namely, that Carlini breached the confidentiality provisions of the agreement.

Carlini argues that the heart of the nondisclosure provision in the contract provided that he was not to discuss the terms of the agreement with any other parties. He claims that the idea was to keep the amount and duration of the payments confidential, not the existence of the agreement. Carlini admits that he disclosed the existence of the severance agreement to multiple parties but he argues that because he never discussed the terms of the agreement with anyone else, he did not breach the contract.

A breach of contract is the nonperformance of a duty. *Weber v. North Loup River Public Power and Irrigation District*, 288 Neb. 959, 854 N.W.2d 263 (2014). In interpreting a contract, a

court must determine, as a matter of law, whether that contract is ambiguous. *Gibbons Ranches, L.L.C. v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id.* When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. *Id.*

The district court found that the language in the contract was plain and unambiguous. The confidentiality provision in the agreement states that Carlini promised to keep "the existence of this Agreement, the substance of this Agreement, and the terms of this Agreement . . . absolutely and forever confidential." This language directly contradicts Carlini's argument that the confidentiality provision was primarily intended to apply only to the terms of the agreement. The language of the contract is plain and unambiguous and could not say any more clearly that the nondisclosure provision applied to the existence of the agreement, not just its terms or substance.

Carlini admitted in his testimony that he disclosed the existence of the agreement to multiple parties, including his wife, mother, brothers, friends, and former coworkers. While he argues extensively that he disclosed only that it was a "very generous severance agreement" and did not discuss any of its terms, the fact that he disclosed the agreement's existence is sufficient to constitute a breach of the nondisclosure provision.

Carlini argues that in order to rescind the agreement, Gray was required to prove that the breach was material; however, Gray is not attempting to rescind the contract. Carlini filed a complaint for breach of contract, seeking in part, the payments allegedly due under the severance agreement. Gray filed a counter-claim, seeking in part, return of the payments made to Carlini. Therefore, both parties are seeking to enforce the terms of the severance agreement, not to rescind it.

Returning to the plain language of the severance agreement, Carlini promised not to disclose the existence, substance or terms of the agreement. Within the same paragraph setting forth his obligation of confidentiality was his agreement that if he violated these provisions, he would forfeit his severance pay and return all payments made. It is clear from the plain language of the agreement that the parties agreed that a breach of the confidentiality provision would result in forfeiture of the severance payments. Carlini admits he disclosed to various people the existence of the agreement; therefore he forfeited his severance pay and is required to return all payments made.

This case is similar to *Gulliver Schools v. Snay*, 137 So.3d 1045 (Fla.Dist.Ct.App. 2014) in which a terminated school employee agreed to settle an age discrimination claim against his employer. In return for settlement proceeds, he agreed not to "disclose, discuss or communicate to any entity or person . . . any information whatsoever regarding the existence of the terms of this Agreement. . . . A breach . . . will result in disgorgement of the [school's] portion of the settlement Payments." *Id.* at 1046.

Shortly after signing the settlement agreement, the employee advised his daughter that the case was settled and he was happy with the result. She, in turn, posted on Facebook that her parents had won their lawsuit against the school. The school refused to pay the settlement amount based upon the employee's violation of the nondisclosure provision of the agreement. The employee filed a motion to compel enforcement of the settlement agreement and the trial court granted his

motion. On appeal, the district court of appeals reversed, finding that the language of the agreement was clear and unambiguous and the employee's testimony confirmed his conversation with his daughter, thereby establishing a breach for which his motion to enforce the agreement should have been denied.

Likewise, in the present case, Carlini admits he told various people that he had a generous severance agreement. Given the plain language of the agreement prohibiting disclosure of its existence, Carlini's statements provided a basis upon which Gray could declare a forfeiture of the severance payments.

### (b) Prior Breach by Gray

Carlini claims the trial court erred in failing to find that Gray had breached the contract prior to his alleged breach. He argues that even if his statements regarding the existence of the severance agreement constituted a breach, the trial court should have found that Gray breached the contract first. We find that the record disputes this argument.

Under the terms of the agreement, Gray was to make payments to Carlini every other week, as coincided with its payroll schedule. It is undisputed that Gray made payments to Carlini on October 3, 2014 and again on October 17. Under the terms of the agreement, the next payment would be made on October 31. However, Gray did not make that payment. Carlini testified that he attended several gatherings soon after Swift was terminated and at these gatherings he disclosed that he had a very generous severance agreement. While it is not clear from the record exactly when Gray learned of Carlini's breach, the evidence nonetheless indicates that his breach occurred prior to October 31, the date the next payment from Gray was due. Because Carlini violated the confidentiality provision on or around October 15 and Gray made all of its payments up until the payment due on October 31, we find that the trial court did not err in failing to find that Gray breached the agreement first.

### 3. GRANTING GRAY'S MOTION FOR SUMMARY JUDGMENT

Carlini claims that the district court erred in finding no genuine issue of material fact and finding that Gray was entitled to judgment as a matter of law. Specifically, Carlini argues that there is an issue of material fact as to when Gray learned of Carlini's alleged breach. He claims that such factual dispute prohibits the entry of summary judgment.

From our understanding of Carlini's argument, he asserts that there is disagreement over whether Gray learned of his breach before or after Swift was terminated. However, his reliance on the circumstances of Swift's suspension and termination is misplaced. For the district court to grant summary judgment in its favor, Gray needed to show that it had made payments to Carlini until the time that it learned he had materially breached the contract. Once it learned of this breach, Gray was excused from making any further payments.

Carlini testified that he disclosed the existence of the severance agreement to several friends and colleagues at a gathering either the day Swift was terminated or the next day. He also testified to another dinner with a smaller group during which they discussed matters involving Gray and a separate meeting with a different couple, although it is unclear when these events took place.

Furthermore, it is undisputed that Gray made payments to Carlini on October 3, 2014 and October 17. While we do not have the exact dates upon which Carlini made each disclosure, the

record is clear that he made disclosures on or around October 15, when Swift was terminated. Gray made its scheduled payment to Carlini on October 17 but did not make a payment on the next scheduled date, October 31. We find that these facts are undisputed by the record. Therefore, the trial court did not err in finding that there was no genuine issue of material fact and granting judgment in Gray's favor as a matter of law.

### 4. DAMAGES

Carlini argues that the trial court erred in finding that Gray was entitled to damages. He claims that the provision requiring repayment of previously made severance payments was not supported by consideration and is therefore unenforceable. Carlini asserts that even if the damages provision is found to be enforceable, Gray did not present evidence that it was damaged by his breach, which bars recovery.

Consideration is considered sufficient to support a finding of a valid contract if there is any detriment to the promisee or benefit to the promisor. *Buckingham v. Wray*, 219 Neb. 807, 366 N.W.2d 752 (1985). The trial court found that paragraph 6 of the agreement, which requires repayment of all prior severance payments in the event of a breach of the nondisparagement or nondisclosure provisions, was supported by consideration. Specifically, it found that the second paragraph of the contract, entitled "Consideration by the Company," clearly encompassed paragraph 6 and the promises Carlini made therein.

We agree with the trial court. Paragraph 2 of the severance agreement states, "In consideration of the promises and releases made by Employee contained herein, the Company agrees to provide Employee with the benefits described below[.]" There is nothing limiting the application of this consideration to only certain promises or releases contained in the agreement. To the contrary, this provision explicitly states that it is in consideration of "the promises and releases . . . contained herein." This includes the promises Carlini made in paragraph 6 of the agreement, which contains not only the nondisclosure provision, but the repercussions that flow from his failure to do so.

Paragraph 6 of the agreement states that "Employee agrees that if Employee violates the provisions contained in this Paragraph 6 of the Agreement, Employee will immediately forfeit and/or return to the Company all severance payments made to Employee under the terms of this Agreement." Under these terms, the damages Gray was seeking could be readily calculated by determining the amount of severance payments it had already made to Carlini. Furthermore, such damages could clearly be expected to follow a breach of this provision as they were explicitly stated in the agreement. The fact that, as Carlini contends, Gray did not provide evidence as to specifically how it was damaged, such as a third party using knowledge of Carlini's severance agreement to Gray's detriment, does not bar recovery. Gray did not receive the benefit of its bargain and it is undisputed that Carlini disclosed to other parties information that he had promised to keep confidential.

We find that the contract provided adequate consideration for the nondisclosure provision and that Gray proved its damages by presenting evidence that it had made two payments to Carlini for a total amount of $8,076.92. Pursuant to the terms of the nondisclosure provision as agreed upon by the parties, Carlini promised to pay back that full amount in the event that he breached such provision. Accordingly, we find no error in the trial court's award of damages to Gray.

### 5. OVERRULING CARLINI'S MOTION FOR SUMMARY JUDGMENT

Carlini's final assignment of error is that the trial court erred in overruling his motion for summary judgment. He argues that the trial court should have found that he either did not breach the contract or that his breach was not material. Carlini claims that Gray was still obligated to perform and thus Gray breached the contract by not continuing to make severance payments. Under this theory, Carlini argues there would not be any issues of material fact because the timing of when Gray learned of his breach would no longer matter. Because there is no dispute that Gray ceased making payments, he asserts that the trial court should have found that he was entitled to judgment in his favor as a matter of law. We disagree.

As discussed above, we find that Carlini did breach the agreement, that his breach was material, and that his breach occurred before Gray stopped making payments to him. These findings preclude an entry of summary judgment in Carlini's favor. Therefore, we find that the trial court did not err in overruling his motion for summary judgment.

## VI. CONCLUSION

We conclude the district court did not err in granting summary judgment in favor of Gray, and we therefore affirm.

AFFIRMED.